(No. 33974.—

NORMA RUTH ANDERSON *et al.*, Appellees, *vs.* THE CITY OF ROLLING MEADOWS, Appellant.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

Louis Ancel and Jack M. Siegel, both of Chicago, (Howard B. Bryant, of counsel,) for appellant.

Kirkland, Fleming, Green, Martin & Ellis, and Nelson Trottman, both of Chicago, and Francis E.

KELLY, of Palestine, (THOMAS M. THOMAS, and JOHN J. EDMAN, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This cause comes here from the county court of Cook County, wherein there was filed a petition to disconnect certain territory from the city of Rolling Meadows. The petitioners were the Arlington Park Jockey Club, Inc., Chicago and North Western Railway Company, and substantially all of the electors residing in and landowners of the territory sought to be disconnected. After a hearing on the petition filed, pursuant to section 7—39a of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1955, chap. 24, par. 7—39a.) the county judge found that the petition and the territory met the requirements for disconnection as set forth in the statute and ordered disconnection. The city of Rolling Meadows appealed.

The statute here under consideration is typical in its form and substance of the many disconnection statutes applicable to territory situated in the various municipal corporations in this State. The following are the principal requisites for disconnection and the proof adduced in support thereof. (1) The petition must be filed within one year of the organization of any municipality. The city of Rolling Meadows was organized six months and three days prior to the filing of the instant petition. (2) The property proposed to be disconnected must be "upon the border, but within the boundary of the municipality." The involved territory is upon the east, west and north boundaries of the city, and is within the boundary of the municipality. (3) The proposed disconnected area must contain more than 20 acres. This territory embraces 599.5 acres. (4) The disconnection must not result in the isolation of any part of the municipality from the remainder of the municipality. It appears that all the remaining part of the city

lies to the south and southwest of the territory discon-nected. (5) If disconnected, the territory must not be "wholly bounded by one or more municipalities or wholly bounded by one or more municipalities and a river or lake." There is no river or lake bounding the territory herein, and a portion of the territory north and west of the territory disconnected is unincorporated. (6) The peti-tion "shall be signed by a majority of the electors, if any, residing within the territory." Here 135 out of 152 electors residing in this territory disconnected, signed the petition. (7) The petition must also be signed by a majority of the owners of record of land in such territory. Here 138 of the 205 owners of record of land in the territory dis-connected signed the petition.

As to the hearing on such petitions, these requirements are specified: "The county judge shall give at least 10 days notice of such hearing by publishing notice thereof  *  *  * once in a newspaper having a general circulation within such municipality." Notice was published on September 8, twenty days before the initial hearing, in two newspapers of general circulation in the city of Rolling Meadows. Notice was mailed to the mayor of Rolling Meadows on September 8, 1955. Although any person residing in or owning property in the territory involved, as well as the municipality, could be heard, only the city of Rolling Meadows requested a hearing. Objections were presented to the form and sufficiency of the petition and the validity of the statute but no evidence was offered in support of the objections. We have delineated rather fully the pro-cedural steps followed by the petitioner and the undisputed facts appearing in support thereof, thus finding answer to several of the 29 objections interposed by the city of Roll-ing Meadows.

Appellant argues that this disconnection statute cannot apply to the instant objector because Rolling Meadows was incorporated prior to the statute's enactment, thus giving

the provision retroactive effect. In *People ex rel. Leimbach* v. *Lukenbill,* 314 Ill. 64, this court considered the validity of a detachment proceeding wherein the community consolidated district was organized prior to the act providing for the detachment and at pages 69-70 we said: "Amended section 84*g* provides that all petitions for the detachment of territory from such a district shall be presented to the county superintendent 'under whose direction the district was established.' This language applies to districts already organized as well as to districts to be created in the future. The amended section gives the county superintendent exclusive power, in his discretion, in specified cases, 'to change the boundaries of community consolidated school districts.' The power so conferred is broad enough to include districts organized before as well as after the passage of the amended act. * * * The application of section 84*g*, as amended in 1923, to districts then established does not change existing rights. Amended section 84*g* discloses no legislative intent to confine the right to detach territory from community consolidated school districts solely to such districts as might be organized after July 1, 1923. The necessity and propriety of extending that right to all community consolidated school districts, whether organized before or after the amendment of 1923, are obvious, and it was the legislative purpose to do so." Further answer can be found in *Koeller* v. *Salisbury,* 276 Ill. 230; *Punke* v. *Village of Elliott,* 364 Ill. 604; *Geweke* v. *Village of Niles,* 368 Ill. 463.

The county judge, after hearing the evidence and having in mind that petitioner must sustain the burden of proving the statutory requisites for disconnection, found that all the allegations of the petition had been proved. Such a finding will not be disturbed unless it is found to be palpably against the manifest weight of the evidence. *Bullman* v. *Cooper,* 362 Ill. 469; *People ex rel. Tudor* v. *Vance,* 374 Ill. 415.

The signature by one of the petitioners, the Arlington Park Jockey Club, Inc., is accomplished by Graham P. Smith, vice-president. His signature is attested by the assistant secretary and the corporate seal is affixed. The objectors offered no proof of the lack of authority of Smith to sign the petition on behalf of the corporation but assert that it was incumbent upon the petitioners to prove such authority. Uniformly, we have held that the signature of a corporation by the vice-president with the corporate seal attached must be presumed to be valid in absence of proof of lack of such authority. (*Bryant* v. *Lakeside Galleries, Inc.* 402 Ill. 466, 474.) In *Village of Prairie Du Rocher* v. *Schoening-Koenigsmark Milling Co.,* 248 Ill. 57, at page 61 we said: "Further objection is made that a certain contract, agreement or permit for the appellant to maintain an intake pipe across the right of way and switch track of the St. Louis, Iron Mountain and Southern Railroad Company leading from said railroad company's main track to the mill of the milling company, for the purpose of furnishing water to said mill from said Prairie du Rocher creek, was improperly admitted in evidence. It is urged that the agreement was signed by the vice-president of the railroad company, and that there is nothing in the record to show that said vice-president had authority to sign such an agreement. The vice-president acts for the president, and any contract pertaining to the corporate affairs within the general powers of such officer, executed by him on behalf of the corporation, will, in the absence of proof to the contrary, be presumed to have been done by the authority of the corporation. (*McCormick* v. *Unity Co.* 239 Ill. 306.) This agreement falls clearly within that rule."

Likewise, the objector challenges the validity of the signature of the Chicago and North Western Railway Company. This was accomplished by B. W. Carlton, assistant to the president on behalf of the corporation. His

signature was attested by the secretary and under the corporate seal. Petitioners' exhibit W is a certificate setting forth the authority of Carlton. The objector offered no proof of lack of authority.

Another objection interposed is predicated upon the selection of Ross E. Millett, county judge of DeKalb County, to sit in place of Judge Kerner, the county judge of Cook County, to hear this cause. It is contended by the objectors that only Judge Kerner could properly hear this case. It is urged by appellees that this objection came too late in the proceedings. The city by its attorney appeared before Judge Millett and contested the validity of the statute, participated in the hearing and submitted briefs relating to its constitutionality, and it was not until the city discovered that they had failed in this contention that they asserted the incompetency of the trial judge. If the DeKalb County judge was without authority to hear and determine this cause, any judgment entered therein by him was rendered without jurisdiction and is subject to attack at any time. *People* v. *Miller,* 339 Ill. 573; *People ex rel. Lange* v. *Old Portage Park District,* 356 Ill. 340, 343.

We agree, however, with appellees' contention that the terms of the act of 1879 afford sufficient authority for Judge Millett to sit in the county court of Cook County. It reads as follows: "That the county judges of the several counties of this state, with like privileges as the judges of the circuit courts of this state, may interchange with each other, hold court for each other, and perform each other's duties, when they find it necessary or convenient." Ill. Rev. Stat. 1955, chap. 37, par. 297, p. 1313.

Notwithstanding the broad language of the foregoing statute, appellant argues that it can have no application to the instant problem; that here there is a special statute involved specifically imposing a duty on a particular county judge, *i.e.,* the county judge of the county in which the territory is located. The fact that this is a statutory pro-

ceeding rather than one at common law or in equity is of no significance. In *Pike* v. *City of Chicago,* 155 Ill. 656, 660, this court held that the county judge of Du Page County sitting as the county judge of Cook County had the power and duty to hear a special assessment proceeding which, of course, finds its vitality in a special statute. Appellant seeks to destroy the force of this decision with the argument that the special assessment statute conferred jurisdiction on the county court, whereas the instant statute vests the power in the county judge. We fail to find validity in this distinction.

The appellant has made other contentions but we deem it unnecessary to discuss them. The disconnection here was accomplished in accordance with a statute that sets forth the requirements. The county judge's conclusion that those specifications have been met is supported by the evidence and is affirmed.

*Order affirmed.*