INDIAN VALLEY GOLF CLUB, INC., Petitioner-Appellee, v. THE VIL-LAGE OF LONG GROVE, Respondent-Appellant.

Second District   No. 2—87—0242

Opinion filed June 1, 1988.—Rehearing denied September 23, 1988.

Conzelman, Schultz, Snarski & Mullen, of Waukegan (John M. Mullen, of counsel), for appellant.

William J. Harte, Ltd., and Joseph E. Tighe, of Richard J. Prendergast, Ltd., both of Chicago (William J. Harte and Richard J. Prendergast, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

This is the second appeal arising from the ongoing litigation between the petitioner, Indian Valley Golf Club, Inc. (Indian Valley), and the respondent, the Village of Long Grove (Long Grove), generated by Indian Valley's efforts to disconnect certain property it owns from Long Grove.

The history of this litigation is succinctly set forth in this court's opinion in *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543 (first appeal). Therefore, only those facts pertinent to the issues raised in this opinion will be set forth.

On July 28, 1981, Indian Valley filed a petition to disconnect 117 acres owned by it and lying within the corporate limits of Long Grove pursuant to section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—6). A motion to dismiss the petition, filed by Long Grove, was denied. However, when on October 17, 1983, the case was called for trial, it was learned for the first time that Long Grove had annexed a single lot located on the northern border of petitioner's property. The lot, known as lot 78, had previously been part of unincorporated Lake County. As a result of this annexation, Indian Valley was granted leave to file an amended petition to disconnect. The amended petition involved approximately 113 acres and excluded approximately 3½ acres previously sought to be disconnected in the original petition. Long Grove again filed a motion to dismiss, alleging that the amended petition failed to show that the property sought to be disconnected (subject property) satisfied the statutory requirements for disconnection. Included among those contentions were Long Grove's assertions that the subject property was not situated entirely on the border of Long Grove and that disconnection of the subject property would result in isolation of a portion of the municipality from the remainder of Long Grove. The trial court found that the proposed disconnection would result in the isolation of a portion of Long Grove; however, it further found that the property

which was the subject matter of the proposed disconnection was situated on the border of Long Grove. (*Indian Valley Golf Club*, 135 Ill. App. 3d at 547.) The trial court thereupon dismissed the petition to disconnect. Indian Valley thereafter appealed that decision to this court.

In the first appeal, this court reversed the dismissal of the petition to disconnect. We agreed with the trial court that the subject property was situated on the border of Long Grove. However, we disagreed that the disconnection would result in isolation of a part of Long Grove. In its cross-appeal, Long Grove had argued that lot 78 remained isolated from Long Grove because it was inaccessible to Long Grove by road and, thus, incapable of being provided with police services by the village. We stated as follows:

"[I]n our view the fact that lot 78 is inaccessible to the village by road is inconsequential to a determination of whether or not the lot is isolated from the rest of Long Grove. Rather, what we believe to be the determining factor, according to cases from this district and others, is contiguity. If property is isolated from a municipality, it is not contiguous to it; if contiguous, it is then not isolated. [Citation.]" *Indian Valley Golf Club v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 548-49.

We then determined in the first appeal that the common boundary of 150 feet in this case constituted a substantial physical touching, and that the contiguity was such that it satisfied the mandate of the statute that no part of a municipality should be isolated from the remainder. (*Indian Valley Golf Club*, 135 Ill. App. 3d at 551.) The dismissal of the petition was reversed, and the case was returned to the trial court for further proceedings.

Following the denial of its petition for rehearing in the first appeal and prior to the issuance of this court's mandate, Long Grove filed a petition for condemnation against the legal and equitable owners of the Fiore Nursery property located immediately to the east of Indian Valley's property. A few weeks earlier, Long Grove had passed an ordinance annexing State Highway 83, which runs along the eastern boundary of Indian Valley's property and separates the Indian Valley golf course from the Fiore Nursery. Following this, Long Grove passed a number of ordinances purporting to annex other parcels of property lying to the west and north of lot 78, north of Indian Valley's property. See *Village of Long Grove v. First National Bank* (1987), 164 Ill. App. 3d 253.

After the matter was remanded to the trial court, Long Grove filed a motion for summary judgment; Indian Valley filed a cross-mo-

tion for summary judgment. Due to the activities outlined above, the municipal boundaries of Long Grove had undergone certain changes since the time of the first appeal to this court. Prior to the appeal, the subject property had approximately one-half mile that was coterminous with Long Grove's boundaries. At the time of the hearing on the motions for summary judgment, the subject property had 335 feet at the northern portion of the Indian Valley property which was coterminous with the then existing boundaries of Long Grove. Since the Route 83 right-of-way had been annexed to Long Grove, the disconnection of the Indian Valley property would result in the Route 83 right-of-way being connected to Long Grove for a distance of only 40 feet.

On September 26, 1986, following a hearing on the motions for summary judgment, the trial court denied Long Grove's motion and granted partial summary judgment in favor of Indian Valley as to the border and isolation requirements of the disconnection statute, although no order was entered on that date. In granting partial summary judgment for Indian Valley, the trial court stated as follows:

"The Appellate Court found, as a matter of law, after reviewing the facts developed at the hearing on the Motion to Dismiss before the trial Court that there would be no isolation under the disconnection statute and, in effect, reversing the trial Court's determination on that issue. And the Appellate Court further found that the land sought to be disconnected was on the border.

In my opinion, the trial court here is bound by those two holdings. The facts at the time of the hearing are controlling, as Long Grove suggests, and that was stated in the Appellate Court decision in this case. But at least in my view, 'the facts at the time of the hearing' means the facts at the time of the hearing in the 2—619 motion. If the facts were changed or have been changed—and they have been changed. There is no question about that. The facts are changed. I could only consider those changed facts if the Appellate Court had remanded for rehearing on the issues that those facts are relevant to.

The Appellate Court did not remand this case for rehearing on the border or isolation requirements. The Appellate Court made a finding on those requirements. There was no remandment of further hearing on further evidence on those two issues. The matter was remanded for further proceedings, whether those would be summary judgment or a trial on the remaining statutory criteria. And I believe that those are the

only issues that remain before me."

Commencing on October 27, 1986, and continuing through November 3, 1986, the case proceeded to trial on the remaining elements Indian Valley had to satisfy in order to obtain disconnection, namely, whether disconnection would unreasonably disrupt the growth prospects and planning and zoning ordinances of the municipality; whether disconnection would result in substantial disruption to existing municipal services; and whether the municipality would be unduly harmed by disconnection through the loss of tax revenues in the future. On December 9, 1986, the trial court rendered its decision finding that Indian Valley had proved the required elements of the disconnection statute. This appeal followed.

■■ Section 7—3—6 of the Illinois Municipal Code provides in pertinent part as follows:

"The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality; (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted; (5) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street lighting, water mains, garbage collection and fire protection; (6) if disconnected, the municipality will not be unduly harmed through loss of tax revenue in the future. The procedure for disconnection shall be as follows: The owner or owners of record of any such area of land shall file a petition in the circuit court of the county where the land is situated, alleging facts in support of the disconnection. The municipality from which disconnection is sought shall be made a defendant, and it, or any taxpayer residing in that municipality, may appear and defend against the petition. If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order dismissing the petition." (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6.)

Where the subject property meets the requirements of the statute,

there is no discretion lodged in the trial court, and the petition for disconnection must be granted. On the other hand, if the subject property fails to meet any one of the requirements then the petition must be denied. (*Van Bebber v. Village of Scottville* (1957), 13 Ill. App. 2d 458, 462.) The courts have liberally construed disconnection statutes in favor of disconnection if the enumerated requirements are met, regardless of the purpose of the petitioner, the common theme being to permit disconnection absent hardship or impairment to the municipality. *Indian Valley Golf Club*, 135 Ill. App. 3d at 547.

█ It is the status and facts at the time of the hearing rather than the situation that existed when the petition for disconnection was filed that determine whether two pieces of property are contiguous. (*In re Incorporation of Village of Capitol Heights* (1968), 41 Ill. 2d 256, 258; *Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 755.) Black's Law Dictionary defines "hearing" as follows:

> "Proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have right to be heard, and is much the same as a trial and may terminate in final order." Black's Law Dictionary 649 (5th ed. 1979).

In construing the term "hearing" within the context of section 52(1) (now section 2—1009 (voluntary dismissals) of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1009)), our supreme court has held that a "hearing" is the equitable equivalent of a trial. (*Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 309.) A hearing is a nonjury proceeding in which evidence is taken on the merits. (*Kahle*, 104 Ill. 2d at 309.) Both a trial and a hearing involve a determination of the parties' rights. *In re Marriage of Fine* (1983), 116 Ill. App. 3d 875, 879.

In *Fine*, again in the context of voluntary dismissal, the court traced the history of the term "hearing." We note with interest that at one time a hearing on a section 48(1)(c) (now section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619)) motion was a "hearing" under section 52 because the granting of such a motion would in effect dispose of the case. On the other hand, motions under section 45 of the Civil Practice Act (now section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615)) and motions for summary judgment were not considered hearings. (*Fine*, 116 Ill. App. 3d at 879.) In order to eliminate the confusion as to what constituted a "hearing," particularly as concerns

preliminary motions, the *Fine* court propounded the "simple and easily applied rule that a 'hearing,' being merely the equitable equivalent of a 'trial' as it is used in section 52(1), does not begin until the parties begin to present their arguments and evidence to the court sitting without a jury in order to achieve an ultimate determination of their rights." *Fine*, 116 Ill. App. 3d at 879.

This court is faced with a similar dilemma, *i.e.*, fastening a definition of "hearing" for the purpose of the statute in this case that is both in keeping with the existing case law and that is practical in its application. Prior to the first appeal in this case, the trial court here considered evidence, exhibits, and arguments of counsel when it determined on March 21, 1984, that one of the disconnection requirements had not been met and that a second requirement had been met. The merits of those two issues were decided, considered on appeal, and finally resolved. In order to provide uniformity in the use of the term "hearing" and to prevent the use of what this court described in the prior opinion in this case as "offensive annexation tactics," we determined that the "hearing," the timing of which fixes the facts and status of the disconnection proceeding, is that proceeding in which there is a determination as to one or more of the statutory elements, regardless of how many of the other proceedings are necessary for a final determination as to all of the elements.

Having determined that the "hearing" in this case was the March 21, 1984, hearing on Long Grove's motion to dismiss, we will now address Long Grove's contentions on appeal.

■ Long Grove contends, *inter alia*, that the trial court erred in granting partial summary judgment to Indian Valley on the border and isolation requirements since, by virtue of the annexations which took place prior to the issuance of the mandate of this court, the subject property is totally surrounded by the municipal boundaries of Long Grove, and that the Route 83 right-of-way would be connected to Long Grove by only 40 feet if disconnection were granted. On the other hand, Indian Valley argues that this court's opinion on the border and isolation requirements foreclosed the trial court from considering the effect of the annexations on those two elements.

In *Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 666, the court stated:

> "Initially, we note that where the appellate court reverses a judgment, its findings are final upon all questions decided [citations], and the court to which the cause is remanded can take only such proceedings as conform to the judgment of the appellate court [citations]. However, where a reviewing court re-

mands a cause with specific directions, they must be followed exactly [citations]; but, if specific directions are not given, the trial court is required to examine the appellate court's opinion and determine therefrom what further proceedings would be proper and consistent with the opinion [citation] and, in this regard, it may allow the introduction of new evidence if consistent with the announced legal principles [citations]."

At the conclusion of our opinion in *Indian Valley Golf Club*, we stated as follows:

"For the reasons stated, the judgment of the circuit court of Lake County dismissing Indian Valley's amended petition to disconnect should be reversed and the matter remanded for further proceedings." *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 554.

The findings and conclusions of law set forth in our opinion in the first appeal constitute the law of the case and were binding upon the trial court on remand, as that court properly determined here. (*Thomas v. Durchslag* (1951), 410 Ill. 363, 365; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 359; *Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380, 387.) No question remains in this case that the "border" and "isolation" requirements of the statute have been met, and those findings cannot be again litigated. The only remaining matter to consider on this appeal is whether the other requirements for disconnection were met.

Therefore, the trial court did not err in denying Long Grove's motion for summary judgment.

■ Long Grove contends that Indian Valley failed to prove that Long Grove's planning and zoning would not be unreasonably disrupted by the disconnection. Both sides presented extensive testimony on this issue by expert witnesses, reaching, as might be expected, opposite conclusions as to the effect the disconnection would have on Long Grove's planning and zoning. Both Long Grove's expert, Joseph Able, and Indian Valley's expert, Gerald Estes, presented excellent credentials and were qualified as experts by the trial court.

Joseph Able testified at length as to Long Grove's comprehensive plan. He also compared the chronological progression of the comprehensive plans adopted by Long Grove in 1957, 1973, and 1979, and found them to be virtually identical in the concept of preserving the semirural character of the area. Able testified that, conservatively, if the subject property were disconnected, it would be developed on 40,000-square foot, single-family lots within the County of Lake. He further testified that the trend of development in the area within

Long Grove is two-acre single-family residential, but that the trend of development in the immediate area of unincorporated Lake County, as well as other municipalities, was of a much greater density with commercial and multifamily uses, as well as residential uses. In rendering his opinion as to the effect of disconnection, Able testified as follows:

"My opinion is that the disconnection of this particular parcel of property which is a key parcel in terms of allowing the community control, development, not only on the subject property, but the property directly to the east that it would be very disruptive to the planning and zoning ordinances of the community. Now so much from the standpoint of just what kind of a negative affect [sic] it would have on the lots that butt up to the property, but to the entire philosophy of the planning concept for Long Grove. I think the minute that this particular area were [sic] disconnected and developed as I said I thought the highest and best use and the most reasonable probability in the unincorporated area is one acre lots, then it destroys the entire 30, 20 years this community has gone through.

The idea of trying to maintain a particular character, a character that is semi-rural, large lot, maintaining the environmental qualities of the community, trying to keep the densities low which affect traffic moments [sic], all the planning that the village has done for this area now going to a lower density. It's an intrusion in this key two acre area that not only encompasses the subject property, but all the area around it. It sort of opens the door to other disconnections, to other rezonings, and so from that standpoint, it just completely destroys the ability of the community to maintain what they have been doing through both zoning, planning, and litigation for all these years."

On the other hand, Gerald Estes rendered the following opinion on the effect of disconnection:

"It is my opinion that the planning and zoning powers of the Village of Long Grove will not be unduly disrupted. In fact, they probably will be strengthened as a result of the disconnection for several reasons. One, that it is clear that the Village of Long Grove can continue to annex properties in and totally around the subject site to the north, to the east, to the northeast, assuming that those contiguous property owners wish to be annexed.

Second of all, since the property falls within the zoning extraterritorial jurisdiction of the Village of Long Grove, Long

Grove still has the ability to exercise its right of legal objection to any county zoning change, and if it is unincorporated, Long Grove must still review and approve the planning and engineering of any subdivision-type activities on the property even though it is outside of the municipality. All plats within a mile and a half of any municipality must have municipality approval."

Additional witnesses were presented by each side in support of their respective positions.

In seeking to defeat the disconnection sought by Indian Valley, Long Grove argues that such disconnection would undermine the rural character of the village. According to Able, Long Grove's expert witness, given disconnection, it is a reasonable certainty that within the next 20 years, the area would develop as a single-family, one-acre lot development. However, on cross-examination, Estes, Indian Valley's expert, testified that the present owners had told him that the property would remain as a golf course and that they had no plans to develop it.

As this court has previously indicated, we will not engage in speculation with regard to future events. It is the state of events that exists at the time of the hearing which controls, not the state of events that a litigant might desire. (*La Salle National Bank v. Village of Willowbrook* (1963), 40 Ill. App. 2d 359, 362.) Long Grove cannot defeat the request for disconnection on the theory that it frustrates the village's future designs. *La Salle National Bank*, 40 Ill. App. 2d at 362.

Long Grove maintains that this court should summarily disregard the testimony of Gerald Estes. Long Grove argues that Estes' testimony is not credible and cites several examples of inaccuracies, contradictions, and inconsistencies and the like in his testimony; it argues, further, that Estes' testimony showed his lack of knowledge with regard to Long Grove's zoning and planning ordinances.

It is well settled that the credibility of witnesses is a matter to be decided by the trier of fact.

"The trial court is in a far better position to determine the credibility of witnesses, and a court of review cannot substitute its judgment on these matters unless the findings are against the manifest weight of the evidence. [Citations.] It is the province of the trial court as the trier of fact to resolve inconsistencies in testimony and to determine the credibility of witnesses. [Citation.]" *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 333-34.

Upon careful review of the record before us, we conclude that the trial court's finding that disconnection will not unreasonably disrupt the planning and zoning of Long Grove is not against the manifest weight of the evidence.

■ Long Grove contends that Indian Valley failed to prove its ownership of the subject property in order to satisfy the statutory requirement that only property owners may seek disconnection of their property. Long Grove argues that while Anthony Fillicio, one of the officers of Indian Valley, testified over objection that Indian Valley was the owner of the property, oral testimony is not competent or admissible to show title to real estate, citing *Gross v. Estate of Thornson* (1918), 286 Ill. 185, 193. Although Indian Valley also introduced, over objection, certified copies of two deeds to establish ownership of the property, since they were admitted into evidence without any foundation testimony to establish why the original deeds were not available, or what efforts the witness had made to locate the originals, Long Grove argues that it was error to admit the certified copies of the deeds into evidence, as well.

In *People v. Bowman* (1981), 95 Ill. App. 3d 1137, the court observed that the current trend of the law of evidence was away from strict adherence to "best evidence" foundation requirement. Acknowledging the accuracy and reliability of modern methods of information storage and retrieval, the Federal Rules of Evidence now provide for the admission of a duplicate unless "(1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." (Fed. R. Evid. 1003.) The court noted cases from Indiana (where the Federal Rules of Evidence have been adopted) and other jurisdictions that express "what implicitly has been recognized in Illinois *** that the accuracy of a duplicate resulting from the reproduction of the contents of an original is in most cases no longer a significant issue. The inquiry instead is directed to the authenticity of the original, unless circumstances suggest that further inquiry is required." *Bowman*, 95 Ill. App. 3d at 1143.

Long Grove raised no issue as to the authenticity of the original deeds in this case other than objecting on a purely technical basis to Indian Valley's failure to produce them. We find no circumstances in the record here to require a further inquiry into their whereabouts. Therefore, it was not error for the trial court to admit the certified copies of the deeds into evidence, and we conclude that Indian Valley established by sufficient evidence its ownership of the subject property.

■ Finally, Long Grove contends that disconnection is barred on the ground that the statute never intended to permit disconnection of property previously included voluntarily in the municipality. Long Grove argues that it would be manifestly inequitable and against public policy for a property owner or a successor owner to avail himself of the disconnection statute after having reaped the benefits of being within the community for a period of 27 years. Moreover, Long Grove argues, the disconnection is unwarranted in this case since the purpose of a section 7—3—6 disconnection is to avoid municipal taxes, and Long Grove levies no taxes.

In support of its contention, Long Grove relies on the following cases: *Zweifel Manufacturing Corp. v. City of Peoria* (1957), 11 Ill. 2d 489, 493 ("A party who has accepted and retained the advantages of an order cannot be heard to attack the validity or propriety of conditions upon which its right to such advantages was expressly predicated"); *Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167 (equitable estoppel); and *Johnson v. Johnson* (1975), 26 Ill. App. 3d 64 (equitable estoppel). Although we agree with the general principles announced in those cases, none of the cases cited involve the disconnection statute, nor do the facts here call for the application of those principles to the case at bar. Moreover, such application would defeat the purpose of the disconnection statute. Finally, we find no authority for concluding that the sole purpose of a section 7—3—6 disconnection is to avoid municipal taxation. We therefore find no merit in Long Grove's last contention.

For all of the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH and REINHARD, JJ., concur.