HARRIS TRUST AND SAVINGS BANK *et al.*, Petitioners-Appellants, v. THE VILLAGE OF BARRINGTON HILLS, Respondent-Appellee.

Second District   No. 2—88—0277

Opinion filed December 16, 1988.

Thomas R. Burney, of Schain, Firsel & Burney, Ltd., of Chicago (Matthew M. Klein, of counsel), for appellants.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Susan G. Connelly, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This action was brought to disconnect certain property from the Village of Barrington Hills (Village) pursuant to section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6). The only question at issue in the trial court was whether the disconnection would unreasonably disrupt the Village's growth prospects and plan and zoning ordinances. The trial court found that it would and there-

fore denied the disconnection.

On appeal, petitioners contend that the trial court erred in considering certain testimony as evidence that disconnection would unreasonably disrupt the growth prospects of the Village. Petitioners also contend that the trial court's decision was against the manifest weight of the evidence. We reverse.

The subject property is approximately 95 acres located at the western boundary of the Village of Barrington Hills. The property is surrounded by the Village of Carpentersville on all but its eastern side. (See diagram below.) The property in Carpentersville immediately adjacent to the subject property is a tract home development known as Meadowdale. The lots in this area are generally 50 to 60 feet by 100 to 110 feet. There is a church on the subject property, a farm house, a small cottage, and a newer home.

According to the "Comprehensive Plan for the Village of Barrington Hills," the Village covers approximately 27 square miles. Over 90% of the Village is zoned for five-acre single-family development.

Several experts testified as to the impact disconnection would have on the growth, planning, and zoning of Barrington Hills.

Steve Lenet testified that the only privately owned land in Barrington Hills adjacent to the subject property is developed with three single-family residences, each with one driveway access to Helm Road. Lenet stated that these lots were fully developed under Barrington Hills' zoning ordinance. On the east of the three lots and adjacent to the east boundary of the southern part of the subject property is Kane County Forest Preserve land.

Lenet testified that in his opinion disconnection would not unreasonably disrupt the planning of Barrington Hills. Lenet also testified that in his opinion disconnection would in no way be disruptive of the zoning efforts, zoning plan, or zoning ordinance of Barrington Hills. Lenet further testified that disconnection would not unreasonably disrupt the growth prospects of Barrington Hills because, under Barrington Hills' zoning, the greatest possible development of the subject property would be 14 to 15 single-family lots. He further stated that, because no unincorporated areas are contiguous to the property, no growth by annexation would be cut off.

James Coleman similarly testified that disconnection of the subject property should have minimum impact on the growth of Barrington Hills. He also testified that certain objectives of the Village's plan would not be affected by disconnection.

Donald P. Klein, executive director of the Barrington Area Council of Governments, testified that disconnection would unreasonably disrupt the Village's growth prospects because the public perception of the planning and zoning within the community would be eroded. Klein also testified that in his opinion disconnection would unreasonably disrupt the Village's plan. Klein also testified that disconnection would unreasonably disrupt the Village's zoning because the perception would be that zoning is not very steady.

Lane Kendig, former director of planning for Lake County, testified that the Village's growth comes not through annexation but through development of land from agricultural to residential use. Kendig testified that disconnection would unreasonably disrupt the Village's growth prospects because the subject property would no longer be able to sustain any growth within the Village and because disconnection threatens growth prospects in the rest of the Village because it alters the desirability of living in Barrington Hills. It was also Kendig's opinion that disconnection would disturb the Village's zoning because the disconnection represents a means by which the property can be rezoned to a higher use.

Kendig also stated that it was his opinion that a large amount of area within the Village was threatened by incremental disconnection. Kendig supported this opinion by a map upon which he had indicated parcels of land which potentially could be disconnected.

Richard Roddewig, a real estate consultant, testified that it was his opinion that disconnection would disrupt growth because the market value of adjacent property would decrease.

After the hearing, the trial court concluded that disconnection would unreasonably disrupt the Village's growth prospects and plan-

ning and zoning ordinances. The trial court therefore denied the petition for disconnection. In so doing, the trial court stated "that some of what [it] considered as the most impressive testimony in this case came from Lane Kendig \*\*\*. He defined growth in Barrington Hills as growth pursuant to the Village's Comprehensive Plan, not just physical growth through annexations. \*\*\* Disconnection alters the market—it threatens the desirability of living in the community and impacts existing residents who depend on the Village's protection of their investments."

Petitioners initially contend that the trial court erred when it considered testimony that disconnection would unreasonably disrupt the Village's potential growth because disconnection would adversely affect the market. Petitioners argue that the term "growth" as used in section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6) is limited to future acquisition of land through annexation. In response, the Village appears to contend that such evidence was properly considered because a broad definition of the term "growth prospects" is appropriate in the present case.

■ The decision of the trial court regarding the statutory requirements should not be disturbed on review unless it is against the manifest weight of the evidence. *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 214.

■ Section 7—3—6 provides in pertinent part:

> "The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which \*\*\* (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted \*\*\*." Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6.

Courts have liberally construed disconnection statutes in favor of disconnection. *In re Disconnection from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 965; see also *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 547, 550.

■ Several cases have addressed "growth prospects" in terms of a municipality's ability to annex other land in the future. (*In re Disconnection of Territory*, 122 Ill. App. 3d at 970-71; *La Salle National Bank*, 81 Ill. App. 2d at 215.) For example, in *La Salle National Bank*, the court found that there was no disruption of potential growth where the property to be disconnected was surrounded on all sides by another municipality. (81 Ill. App. 2d at 215.) On the other

hand, in *Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 754, this court viewed "growth potential" as the ability of a municipality to expand its population in the land to be disconnected. None of these cases, however, have focused on the impact on development in remaining land due to market reactions to the disconnection. We find that such a focus is too attenuated and does not further a liberal construction in favor of disconnection. We therefore are of the opinion that in using the term "growth prospects," the legislature did not intend that courts should look to development that would occur in the remaining part of the municipality but for the disconnection. Accordingly, we find that the trial court erred in considering market reaction to the disconnection. We further find that absent the economic impact on the remaining land, the evidence does not support a finding that there would be an unreasonable disruption of the Village's growth prospects. A disconnection would not inhibit growth in the geographic sense because the subject property is substantially surrounded by Carpentersville. (See *La Salle National Bank*, 81 Ill. App. 2d at 215.) Likewise, disconnection would not unreasonably disrupt growth that would occur through development of the subject property because under the Village's zoning only 14 to 15 new houses could be developed. See *Frank*, 106 Ill. App. 3d at 754.

■ With regard to the effect that a disconnection will have on zoning, this court has previously focused on whether disconnection would materially alter the proportions of village lands classified for various uses. (*Frank*, 106 Ill. App. 3d at 754-55.) In the instant case, over 90% of the Village has the same zoning as that of the subject property of which approximately 25% of the Village is made up of forest preserve. Consequently, about 65% of the Village which is developed or subject to being developed has the same zoning as that of the subject property. Thus, disconnection will not unreasonably disrupt the Village's zoning or plan.

In accordance with the foregoing analysis we find that the decision of the trial court was against the manifest weight of the evidence. We therefore reverse the trial court's decision and allow the disconnection.

Reversed.

UNVERZAGT and McLAREN, JJ., concur.