(No. 68158.—

HARRIS TRUST & SAVINGS BANK *et al.*, Appellee, v.
THE VILLAGE OF BARRINGTON HILLS, Appellant.

*Opinion filed December 21, 1989.—Rehearing
denied January 29, 1990.*

RYAN, J., concurring.

David C. Jacobson and Susan G. Connelly, of Sonnenschein, Nath & Rosenthal, of Chicago, for appellant.

Schain, Firsel & Burney, Ltd., of Chicago (Thomas R. Burney and Matthew M. Klein, of counsel), for appellee.

John M. Mullen, of Waukegan, for *amicus curiae* Village of Long Grove.

Fred L. Foreman, State's Attorney, and Mitchell L. Hoffman, Assistant State's Attorney, of Waukegan, for *amicus curiae* County of Lake.

Kelly R. Welsh, Acting Corporation Counsel, of Chicago (Ruth M. Moscovitch and John D. McDonough, Assistant Corporation Counsel, of counsel), for *amicus curiae* City of Chicago.

Erwin W. Jentsch, Corporation Counsel, of Elgin, for *amicus curiae* City of Elgin.

Thomas W. Kelty, of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae* Illinois Municipal League.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Harris Trust & Savings Bank, Faith Lutheran Church of Meadowdale, Caryl C. Wilder, Jonathan T. Wilder and Phillip E. Bash (collectively, plaintiffs) originally filed a petition in the circuit court of Cook County pursuant to section 7—3—6 of the Illinois Municipal Code (Municipal Code) (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6) to disconnect certain property from the defendant, the village of Barrington Hills (village). The village

filed a special and limited appearance contesting venue and a motion, pursuant to section 2—106 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—106), to transfer venue to the circuit court of Kane County, because the situs of the property was in Kane County, not Cook County. The motion to transfer venue was granted. Following a bench trial, the plaintiffs' petition was denied because the trial court found that disconnecting the property would unreasonably disrupt the growth prospects and plan and zoning ordinances of the village. Plaintiffs appealed and the appellate court reversed, as it determined that the trial court's finding was against the manifest weight of the evidence. (177 Ill. App. 3d 673.) The village's petition for leave to appeal was allowed (107 Ill. 2d R. 315), and the City of Chicago, City of Elgin, Village of Long Grove, Lake County and Illinois Municipal League were granted leave to file briefs as *amici curiae* (107 Ill. 2d R. 345) in support of the village.

The question to be decided is whether disconnection of the subject parcel will unreasonably disrupt the growth prospects and plan and zoning ordinances of the village. (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(4).) The parties agreed by their pleadings the other disconnection factors (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6) had been met.

The village covers nearly 27 square miles, 25% of which is forest preserves and other permanent open space, and over 90% of the village, including the preserves and open spaces, is zoned R—1 (single-family residence district), which requires a minimum lot size of five acres. Plaintiffs are the owners of record of approximately 95 acres situated on the village's western limit at its border with Carpentersville. The property, resembling an inverted "L," is located on the south side of Helm Road about a quarter of a mile east of Route 25.

It has 1,800 feet of frontage on Helm Road, a maximum depth of 2,600 feet, and is surrounded on the north, south and west by Carpentersville. To the east are three lots of five acres or more and the Helm Woods Forest Preserve, which is owned by the Kane County Forest Preserve District. The Dundee Township Park District also owns a park that is contiguous with the parcel's southeast corner. (See the map appended to the end of this opinion.) The parcel is zoned R—1 and is used for farming, and includes three houses, a church and parsonage.

At trial both sides presented expert witnesses. Plaintiffs' experts were John Coleman and Steven Lenet. Coleman, a realtor and real estate appraiser, stated the impact of disconnection would be minimal because the residential properties to the east were all developed and the Kane County forest preserve would not be affected at all. On cross-examination, Coleman stated that he was asked to appraise the property assuming a number of scenarios ranging from five-acre lots to development of multiple-family housing at a density of 12 units per acre. He thought development at 12 units per acre was unrealistic, but said that type of development would have a greater impact on the surrounding area than development of five-acre lots, as there would be more people, traffic and activity. He concluded, however, that the impact would be cushioned because of the buffer provided by the forest preserve and other existing properties in the area.

Lenet, a land-use consultant, testified that disconnection would not unreasonably disrupt the plan or zoning ordinances nor would it unreasonably disrupt the village's growth prospects, because under the current zoning only 14 or 15 lots could be developed. He said the property was unlikely to develop under that zoning, and

noted that if disconnected the property would be zoned at Kane County's highest residential classification.

Robert Kosin, Donald Klein, Lane Kendig and Richard Roddewig testified for defendant. Kosin, the village's director of administration, said the comprehensive plan set forth objectives which the village would like to maintain in planning unit seven, the unit in which the subject parcel is located. He testified about the usage of Helm Road, but was not asked if disconnection would disrupt the village's growth prospects, plan or zoning ordinances; however, he said the village opposed disconnection because it "circumvents our planning and zoning." On cross-examination, he said disconnecting the property would not affect the majority of objectives set forth in the comprehensive plan for planning unit seven.

Klein, executive director of the Barrington Area Council of Governments, said disconnection was simply a way of avoiding the planning and zoning process. He said disconnection would unreasonably disrupt: the village's growth prospects, because it would fragment its western edge; the planning ordinance, because planning implies continuity and disconnection would upset that continuity; and the zoning ordinance, because disconnection would fragment the village limits. He said the property could be developed at its current zoning using "mitigating devices" to shield it from "the Barbary Coast" of Carpentersville. On cross-examination, Klein stated that if the property were disconnected the village limits would be less fragmented than at present.

Kendig, a land-use consultant, stated disconnection would unreasonably disrupt the village's growth prospects because it would remove the property from the village, thereby making it unavailable for village growth, and would undermine the land market in the village. He said that disconnection would unreasonably

disrupt the village's plan because it would alter the boundaries and character of the village, and the village would be threatened by incremental disconnections. He stated that disconnection would unreasonably disrupt the zoning ordinance because it would result in a zoning change, but without going through the zoning process. He said the property as zoned could be developed, if the property and homes were designed to minimize the impact of the smaller homes and lot sizes of Carpentersville.

On cross-examination, Kendig said the threat disconnection posed was in serving as a precedent for future disconnections. He admitted, however, that there had been two prior judicial disconnections over the past 25 years; that those cases were known within the village and there had been no rush to disconnect. He also said this was "basically" a zoning case, that if the property were disconnected the village could still use its extraterritorial zoning powers to influence the parcel's development, and that he was unqualified to determine market value.

Roddewig, a real estate appraiser, said the parcel could be developed as zoned because of the strong market for residential development in the village. He added that disconnection would disrupt the growth prospects because it would affect property values. On cross-examination he said he was unable to assign a dollar value to the disruption that disconnection would have on market values.

The village argues that: the appellate court erred by giving the disconnection statute (Ill. Rev. Stat. 1985, ch. 24, par. 7–3–6) a liberal construction; the trial court should have been permitted to consider the effects that disconnection would have on the land remaining in the village; and the trial court's finding was not against the manifest weight of the evidence. Plaintiffs contend that

the appellate court correctly construed the disconnection statute, and that the trial court's finding was against the manifest weight of the evidence.

It is universally recognized that municipal corporations are creatures of the State and that, absent constitutional restraints (*e.g.*, voting rights (*Gomillion v. Lightfoot* (1960), 364 U.S. 339, 5 L. Ed. 2d 110, 81 S. Ct. 125); "home rule" (Ill. Const. 1970, art. VII, §6)), they are subject to the will and discretion of the legislature. (See, *e.g.*, *Hunter v. City of Pittsburgh* (1907), 207 U.S. 161, 177-80, 52 L. Ed. 151, 158-60, 28 S. Ct. 40, 46-47; *City of Chicago v. M. & M. Hotel Co.* (1910), 248 Ill. 264, 268-69.) It is also well settled that the legislature has the power to fix and control the territory and boundaries of municipal corporations. (See, *e.g.*, *Richter v. City of Mt. Carroll* (1947), 398 Ill. 473, 477; *Geweke v. Village of Niles* (1938), 368 Ill. 463, 467, 117 A.L.R. 262; *Coles v. County of Madison* (1826), 1 Ill. 154, 160.) The legislature has provided various methods for altering municipal boundaries, including provisions for the disconnection of property. See generally Ill. Rev. Stat. 1985, ch. 24, par. 7—1—1 *et seq.*, par. 7—3—1 *et seq.*

Here, the owners had their choice between two methods of disconnection: petitioning the corporate authorities (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—4) or petitioning the circuit court (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6). The owners chose to petition the court.

The requirements for this type of petition are set forth in the statute. (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6.) The parties agreed that all, but factor four, of the statute had been met. Factor four looks to the disruption that disconnection will have on the growth prospects and plan and zoning ordinances of the municipality. Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(4).

The village maintains that the appellate court erred in applying a liberal construction to the disconnection

statute, because: (1) a liberal construction of the statute is an outmoded appendage from an earlier era which is unsuited for a modern urban age; (2) the liberal construction notion was originated by the court in *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, when it erred in applying other disconnection statutes to that case and it has repeated the same mistake in other disconnection cases; and (3) the liberal construction analysis shifted the burden of proof from the plaintiffs. Plaintiffs argue the appellate court properly construed the disconnection statute, and the burden of proof did not shift; they still had to meet all the requirements imposed by the disconnection statute.

The legislature has determined that a need exists for disconnection proceedings, and it has fixed the calculus and set the ground rules for the proper invocation and exercise of that power. Since this court's decision in *Punke v. Village of Elliott* (1936), 364 Ill. 604 (which upheld the constitutionality of the 1935 judicial disconnection statute), the appellate court has consistently construed the disconnection statutes liberally. See, *e.g.*, *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 915; *In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 965; *In re Petition to Disconnect Certain Territory from the City of Palos Heights* (1961), 30 Ill. App. 2d 336, 342; *Van Bebber v. Village of Scottville* (1957), 13 Ill. App. 2d 458, 465; *Wolbach v. Village of Flossmoor* (1946), 329 Ill. App. 528, 531.

During this same time the legislature had occasionally amended the disconnection statute, but the purpose, to facilitate the disconnection of property where the requisite factors have been met, has remained the same. Significantly, the legislature has not altered the liberal construction given the statute by the appellate court.

When a statute has been judicially considered, the sections that have been construed by the court keep their same meaning in any subsequent amendments, absent a clear legislative intent to the contrary. (*People v. Agnew* (1985), 105 Ill. 2d 275, 280.) The liberal construction standard has become part of the law. This interpretation also furthers the goal of the legislature, which has ordained principles for construing statutory language. See Ill. Rev. Stat. 1985, ch. 1, par. 1002.

Nor can it be said that a liberal construction of the statute shifted the burden of proof. As plaintiffs acknowledged, the requirements of the statute must still be borne by the party seeking disconnection. (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6.) The appellate court did not err by construing the disconnection statute liberally. See C. Keating & S. Flanagan, McQuillin on Municipal Corporations §7.25, at 550 (3d ed. 1988); C. Antieau, Municipal Corporation Law §1B.01, at 1B—7 (1985).

The village maintains that the appellate court erred by adopting a "simplistic and narrow definition of the term 'growth prospects.'" It asserts that the appellate court limited growth prospects to geographic growth through annexation. A reading of the opinion discloses that the term "growth prospects" was not limited to a geographic plane. (177 Ill. App. 3d at 677-78.) This contention is therefore without merit.

The village also contends that a court should consider the effect disconnection will have on the growth prospects of land remaining in the municipality. It is beyond dispute that the court should be permitted to examine the reasonableness of the disruption that disconnection will have on the growth prospects of the village. That is, after all, one of the elements of factor four. Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(4).

Factor four focuses on the disruption a disconnection will have on the growth prospects and plan and zoning

ordinances of the municipality as a whole, not its effect on a given parcel of property remaining within the municipality. (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(4).) The inquiry into the elements of factor four must be guided by relevant considerations and must be limited to the facts as they exist at the time of the hearing on the petition. See *In re Incorporation of the Village of Capitol Heights* (1968), 41 Ill. 2d 256, 258; *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 219.

Accordingly, the appellate court correctly found that by using "the term 'growth prospects,' the legislature did not intend that courts should look to development that would occur in the remaining part of the municipality but for *** disconnection." (177 Ill. App. 3d at 678.) Neither the future development of the site nor the future development of the village are proper considerations under this prong of the statute. *Cf.* Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(4); Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(6) (effect on tax revenue in the future). See also *In re Incorporation of the Village of Capitol Heights* (1968), 41 Ill. 2d at 258-59; *La Salle National Bank v. Village of Willowbrook* (1963), 40 Ill. App. 2d 359, 362.

The village argues next that the trial court's finding was not against the manifest weight of the evidence. It reasons that there was conflicting testimony, the trial court saw and heard the witnesses testify and was entitled to make evidentiary and credibility determinations and, consequently, its finding should have been affirmed if there was any evidence in the record to support it. Plaintiffs argue that the trial court's finding was erroneous in that their evidence satisfied each factor of the disconnection statute.

One of the purposes of appellate review is to determine whether the lower court committed reversible er-

ror. Where the trial court sits without a jury, its findings of fact will not be disturbed unless they are against the manifest weight of the evidence. *Anderson v. City of Rolling Meadows* (1956), 10 Ill. 2d 54, 58.

In ruling on the plaintiffs' petition, the trial court relied upon the fact that disconnection would adversely affect the land market in the village as a reason to deny it. The appellate court found that the trial court erred in considering market reaction to the disconnection.

The only evidence presented to support the village's claim that market reaction would "unreasonably" disrupt its growth prospects and plan and zoning ordinances was the testimony of two of its witnesses. No evidence, economic or otherwise, was presented to support that assertion. The two witnesses testifying to the adverse consequences of disconnection on the market were incapable of rendering an informed opinion regarding the market reaction: Kendig stated he was not trained to determine value, and Roddewig said he did not know the economic impact that disconnection of the site would have on any other property. Hence, their testimony on this point was without foundation and could not be deemed credible. Therefore, the trial court's finding was against the manifest weight of the evidence.

Nevertheless, the village argues that there was "plenty" of evidence in the record to support the trial court's finding. The record reveals plaintiffs' experts testified that disconnection would not unreasonably disrupt the village's growth prospects and plan and zoning ordinances, as only 14 to 15 lots could be developed, the property was separated from the village by the Helm Woods Forest Preserve, and disconnection would only minimally impact the surrounding area. The village's experts opposed disconnection because it would: alter or fragment the village's character and boundaries; circum-

vent the zoning process; or serve as precedent for future disconnections.

The legislature has recognized that some disruption to a municipality's growth prospects and plan and zoning ordinances may occur as a result of a disconnection. That alone is no reason to deny a disconnection petition. The test created by the legislature is whether disconnection will "unreasonably disrupt" the growth prospects and plan and zoning ordinances of the municipality. Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6(4).

It states a truism that disconnection will alter the village's borders and, following disconnection, the property will not support any growth within the municipality. Similarly, disconnection of one parcel does not serve as precedent for any other disconnection petition. Each case must turn on its own facts and merits. (*Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 550.) Moreover, this is a disconnection case (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6), not a zoning (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—1 *et seq.*) case. (See *Arthur T. McIntosh & Co. v. Village of Olympia Fields* (1943), 384 Ill. 453, 454-55.) Consequently, those considerations should not enter into the analysis when examining a disconnection petition.

Here, the village has planned and zoned its growth prospects for large lot residential development, limiting population and other nongeographic growth. Also, the subject property is zoned R—1, as is over 90% of the 27 square mile village. As the map highlights, the site is surrounded by Carpentersville and virtually isolated from the village by the Helm Woods Forest Preserve, which would buffer any disruption to the village. Applying the "unreasonable disruption" test to the facts of this case leads to the compelling conclusion that disconnection will not unreasonably disrupt the village's growth prospects and plan and zoning ordinances.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, concurring:

I concur with the holding of the court in this case. However, I write this concurrence to avoid a possible misconstruction of the language of the opinion referring to liberal construction of the disconnection statute. The General Assembly enacted laws which make it possible for territories to be detached from municipal bodies. This, of course, was a recognition by the legislature that when certain conditions prevail, owners of property who desire to have that property detached from the municipality should be permitted to do so. The statute should not be viewed as favoring or disfavoring such detachments, but should be viewed only as a vehicle for doing so.

The opinion in this case finds that the provisions of the statute should be construed liberally in favor of disconnection. The appellate court, in this case, made a one-sentence declaration that "[c]ourts have liberally construed disconnection statutes in favor of disconnection." (177 Ill. App. 3d 673, 677.) What does that statement mean? What does the opinion of this court, in this case, mean when it proclaims that the liberal construction standard should be applied in favor of disconnection in this case? I fear that the language in this opinion may be construed as lessening the burden of the petitioners in a disconnection proceeding.

Neither case cited by the appellate court in support of its statement that courts have liberally construed disconnection statutes in favor of disconnection concern the burden of proof which the petitioners must bear. In *In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960,

965, the question presented concerned the time limitation within which a notice of the filing of the disconnection petition must be given. The court liberally construed the statutory requirement and held that it was directory, and that the failure of the court to give public notice within the time prescribed did not affect the validity of the proceedings. (122 Ill. App. 3d at 966.) In *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, the court liberally construed the statutory requirement that disconnection proceedings may not isolate one part of a municipality from the rest of the municipality. Thus, in both of these cases, in construing the statute, the courts gave the language of the statute liberal construction favoring disconnection.

*Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 915, cited in our opinion in this case, is another appeal involving the same detachment proceedings which were involved in the case referred to above, cited by the appellate court and reported at 135 Ill. App. 3d 543. Here again, in speaking of liberal construction, it appears that the court was referring to liberal construction of the disconnection statute and not of evidence supporting disconnection. *In re Certain Territory of Palos Heights* (1961), 30 Ill. App. 2d 336, 340, also cited in this court's opinion, concerns whether the city should have been estopped from raising a defense to the disconnection proceedings. After reciting the liberal construction rule, the appellate court found that the trial court's finding that the city officials procured the delay in filing the disconnection petition was supported by the evidence. Thus, it is not clear, in this case, in what context the liberal construction rule was applied. In *Van Bebber v. Village of Scottville* (1957), 13 Ill. App. 2d 458, 465, the court applied the liberal construction rule to the lan-

guage of the statute and noted that the legislature had fixed the conditions for disconnection, and the only question the courts are required to consider is whether the owner seeking disconnection has presented a case that brings the property involved within the statute.

In reading the above cases, and indeed in reading the opinion of the court in this case, one may be led to believe that the evidence in the case must be construed liberally in favor of disconnection. I write this concurrence only to prevent a possible misconstruction of the holding in this case to that effect. The liberal construction rule should apply to construing the terms or requirements of the statute and should not be applied to the evidence presented in favor of disconnection. As noted in *Van Bebber,* the owner seeking disconnection has the burden of presenting a case which brings the property within the requirements of the statute. The person seeking detachment must prove his case; that is, that the property falls within the requirements of the statute, by a preponderance or a greater weight of the evidence. As in any judicial proceeding, the scales should not be tilted, but should be evenly balanced; that is, the evidence presented in favor of disconnection should not be liberally construed to favor disconnection and the evidence opposing disconnection should not be strictly construed against those who oppose the petition to disconnect.

APPENDIX

## ZONING DISTRICTS

BARRINGTON HILLS

- R-1   SINGLE FAMILY 5 ACRES
- R-3   SINGLE FAMILY 2 ACRES
- B-3   GENERAL BUSINESS DISTRICT
- LID   LIGHT INDUSTRIAL DISTRICT

CARPENTERSVILLE

- R 2   SINGLE FAMILY RESIDENTIAL
- R-4   MULTI FAMILY RESIDENTIAL
- C-1   NEIGHBORHOOD COMMERCIAL
- C-2   GENERAL COMMERCIAL