(No. 29212.—

JULIUS ROTH, Appellee, *vs.* WILLIAM KAPTOWSKY *et al.*—
(FANNIE KAPTOWSKY, Appellant.)

*Opinion filed March 20, 1946—Rehearing denied May 21, 1946.*

SEYMOUR M. LEWIS, and FRANKLIN J. STRANSKY, both of Chicago, for appellant.

HARRY A. KAHN, and ODE L. RANKIN, both of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This case comes to us on leave to appeal heretofore granted to Fannie Kaptowsky, appellant. The foundation of the litigation is based on a promissory note in the amount of $4000, executed on January 16, 1928, by William Kap-

towsky and Fannie Kaptowsky, his wife. On April 14, 1938, Julius Roth, the holder of the note, brought suit thereon in the municipal court of Chicago. The Kaptowskys, in their answer, admitted owing $1040 but contested the balance on the ground of usury. On November 16, 1939, judgment was entered for the amount admitted to be due and the cause was continued as to the balance, and on November 14, 1941, by agreement, judgment was entered for $2500.

William Kaptowsky died on May 11, 1944. During his lifetime he was the owner of four life insurance policies in the New York Life Insurance Company, the garnishee in these proceedings. In all of these policies, Fannie Kaptowsky, the appellant here, was named beneficiary. Policy No. 1, in the face amount of $2904, upon which there was due at the time of death the sum of $2074.67, was issued August 24, 1923. Policy No. 2, in the face amount of $3416, on which was due at the time of death the sum of $1928.13, was issued March 22, 1927. Policies Nos. 3 and 4, in the respective amounts of $1926 and $1445, upon which there was due at death the sums, respectively, of $1509.21 and $1132.40, were issued April 25, 1930. The aggregate total due on these four policies, which had been reduced from their face value by policy loans, amounted to $6644.41.

On June 6, 1944, Julius Roth, the appellee, caused an execution to be issued on his $2500 judgment, which execution was on the same day returned, showing the defendants not found. On the same day the appellee filed a statement of claim in the original action in the municipal court of Chicago based on the $2500 judgment, and on August 23, 1944, followed a similar procedure in connection with his judgment for $1040. In both cases the New York Life Insurance Company was named as garnishee. The actions were consolidated and Fannie Kaptowsky, on leave granted, filed an intervening petition in which she claimed

the moneys due under the policies were not subject to garnishment. After hearing had on the pleadings and a stipulation of the parties as to certain facts, the court found in favor of Fannie Kaptowsky and discharged the garnishee. On appeal, the Appellate Court reversed the judgment of the municipal court and remanded the cause for further proceedings in accordance with the views expressed in its opinion. Leave to appeal from that judgment was granted by this court.

The record discloses that in the first policy discussed above, the one issued August 24, 1923, one of the optional methods of settlement with the beneficiary was as follows: "The proceeds may be left with the Company subject to withdrawal in whole or in part at any time on demand in sums not less than one hundred dollars. The Company will credit interest annually on the proceeds so left with it at such rate as it may each year declare on such funds and guarantees that the rate of interest shall never be less than three per cent."

In the second, third and fourth policies, among the optional methods of settlement, were the following: "Option 1—The proceeds in whole or in part may be left with the Company subject to withdrawal at any time on demand in sums of not less than one hundred dollars. The company will credit interest annually on the proceeds so left with it at such rate as it may each year declare on such funds, and guarantees that the rate of interest shall never be less than three per cent. * * * Option 5—The proceeds in whole or in part may be left with the Company at interest and paid in equal annual, semi-annual, quarterly or monthly instalments of such amount as may be agreed upon until the entire proceeds left with the Company, including interest thereon as provided in Option 1 have been paid, provided that the fixed amount payable each year shall be not less than five per cent of the original proceeds left with the Company."

All of the policies provided that any election or change of election in connection with the optional methods of settlement would not take effect until indorsed on the policy by the company at its home office. All policies further provided that the company would issue to the beneficiary a certificate of the rights and benefits under the option selected.

The second policy, the one issued on March 22, 1927, provided that "The Insured may direct in writing that the benefits under the above options shall not be transferable nor subject to commutation or incumbrance during the lifetime of the payee." No direction in writing was ever made by the insured. The third and fourth policies, those issued on April 25, 1930, provided that "Unless otherwise directed in writing by the Insured, the benefits of the above options shall not be transferable nor subject to commutation or incumbrance during the lifetime of the payee." The first two policies have no similar provision.

On May 23, 1944, Fannie Kaptowsky executed proofs of death and a statement on a form furnished by the company, which form contained, among other things, question No. 13 as follows: "If you are entitled to elect a method of settlement of the proceeds of the policy or policies and you do not desire immediate payment thereof in cash, please indicate by option number or otherwise what option, if any, you desire to elect as to each policy." To this question the beneficiary replied: "Option 5—One Hundred Dollars per month until money is exhausted."

This form was delivered to the company at its office in Chicago. At the time that Mrs. Kaptowsky delivered this form she orally asked an employee of the Chicago office of the insurance company if she might also have, in any one year, an additional $100 or $500 and was informed by the Chicago office employee that the request would be submitted to the home office in New York.

. By its answer the life insurance company admitted the issuance of the policies; set out the election of Fannie Kaptowsky in connection with the options under the policies and further stated that the company refused to issue a certificate on the basis of the additional request made by the beneficiary, but stated that it was at all times ready, able and willing to perform its obligations under the policies. The answer of the garnishee admitted liability under the policies in the sum of $6644.41, and stated that at the time of the service of summons it was indebted to Fannie Kaptowsky in the above sum, "subject to (1) the terms of said policies in respect to methods of settlement for death proceeds, (2) the surrender of said policies for cancellation, and (3) the final determination of the rights of the parties by a court of competent jurisdiction of the parties and the subject-matter."

Near the close of the hearing, the company, over the objection of Roth, was allowed to strike from its answer the paragraph in which it admitted its liability under the four policies. There remained, however, the statement that the company was indebted to Fannie Kaptowsky in the sum of $6644.41, subject to the three conditions set out above.

At the time of the institution of the garnishment proceeding, there had been no return of the four policies to the insurance company for cancellation. At the hearing, the appellee herein offered in evidence what purported to be copies of the insurance contracts. The trial court sustained objection of the appellant herein to their introduction. They are in the record, however, on an offer of proof made by the appellee. On this appeal, both parties treat the purported copies of the insurance policies as though they were a part of the record. In the consideration of this appeal we, likewise, have considered those copies. The record further indicates that during his life-

time the insured made no choice of options nor any direction in writing that the benefits under any option should not be transferable or subject to commutation or incumbrance during the lifetime of the payee.

The trial court, after hearing and argument on the pleadings and stipulation of facts, entered an order finding for Fannie Kaptowsky as the intervening petitioner and discharging the garnishee. The Appellate Court, in reversing and remanding the cause with directions, seems to base its decision on the fact that because the insurance company had not agreed to the election of the option it was ineffective and the proceeds subject to garnishment.

Among the seven points relied upon for reversal by the appellant herein is the point that the Appellate Court erred in its construction of section 238 of the Insurance Code. (Ill. Rev. Stat. 1943, chap. 73, par. 850.) The provisions of said section are as follows: "All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not, and whether the insured or his estate is a contingent beneficiary or not, shall be exempt from execution, attachment, garnishment or other process, for the debts or liabilities of the insured incurred subsequent to the effective date of this code, except as to premiums paid in fraud of creditors within the period limited by law for the recovery thereof."

It is to be observed, however, that this section by its terms relieves the proceeds of insurance policies, coming within the purview of the section, from the debts and liabilities of the insured. In this case the liability evidenced originally by the note and subsequently by the judgments was against not only William Kaptowsky, the insured, but also Fannie Kaptowsky, the beneficiary.

The appellant further contends that the Appellate Court was in error in holding that, notwithstanding the written election by the beneficiary on the form provided by the insurance company, such attempt was nugatory and of no effect because the company refused or neglected to agree to the written election in view of the oral request of the beneficiary concerning the possibility of an increased withdrawal.

We are of the opinion that there is substantial merit in this contention and that the Appellate Court was in error in holding, on the record in this case, that the beneficiary, Fannie Kaptowsky, did not effectively exercise her option to take the proceeds of the various policies in installments of $100 per month with interest on the balance remaining.

It is a familiar and well-established rule of law that where there is doubt or uncertainty as to the meaning of any provision of an insurance policy, and such provision is susceptible of two interpretations, that interpretation favorable to the beneficiary and against the insurance company will be adopted. *Switchmen's Union of North America* v. *Colehouse,* 227 Ill. 561; *Monahan* v. *Fidelity Mutual Life Ins. Co.* 242 Ill. 488; *Morris* v. *Central West Casualty Co.* 351 Ill. 40, 45.

While it is true that under option 5, which appears in the last three policies of insurance issued, the words "as may be agreed upon" appear, nevertheless the provision for optional methods of settlement gives to the insured or the beneficiary the absolute right to make the proceeds of the policy payable in whole or in part under one of the options. There is nothing unqualified or contingent pertaining to this right in the beneficiary. This right to optional settlement is in the nature of a continuing offer made by the company, both to the insured and his beneficiary, and needs nothing more for its existence than the unqualified election on the part of either the insured or the beneficiary. This question was considered in the case

of *Northwestern Mutual Life Ins. Co.* v. *Joseph*, 31 Ky. L. 714, 12 L.R.A. (n.s.) 439, in which the court said, speaking of the insured's right to election, "His right to the election was optional with him, but absolutely binding upon the company, as in the contract it tendered to him unequivocally this right. Therefore, when the insured exercised his election in proper form and in the manner provided in the policy, it was as irrevocable a contract as could be made." Similarly, in *Pacific States Life Ins. Co.* v. *Brice*, 67 Fed. 2d 710, the court stated, "The offer is contained in the policy contract and is from the company to the insured; the option is in the insured and not the company and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute." We hold, therefore, that proper construction of the optional settlement provisions of these insurance contracts does not require a subsequent agreement by the insurance company after an election by the beneficiary has been made.

In order to determine the effectiveness of the election by Fannie Kaptowsky, we must consider whether the oral request made at the time the option was selected was sufficient to make her apparently unqualified written election a qualified and contingent one. The record indicates that at the time when the beneficiary filled out the insurance company's form and delivered it to the company's Chicago office, she asked an employee of that office whether she could receive the additional privilege of withdrawing in any year $100 or $500 in excess of the $100 per month called for in her answer to question 13. The beneficiary was advised that the request would be forwarded to the home office for decision. Nowhere is there the slightest indication that the beneficiary intended her already exercised option to be contingent upon a favorable reply as regards the additional amounts. The insurance company was free, as far as the policy provisions were concerned, to

accede to or refuse to grant the added privilege of the additional withdrawals. It was not free to reject her written election.

It is true that the policies provided that any election should not take effect until indorsed on the policies by the company at its home office. The whereabouts of the policies themselves is not directly established by the record here but it is indicated by the discussion of counsel in part of the trial proceedings here, that upon the hearing the policies were in the State of California, where William Kaptowsky died. In view of the fact, as shown by its answer, that the insurance company refused to assent to the additional option, the appellee here is in no position to contend that because the indorsements were not made on the policies, the entire proceeds were payable in cash. A further reason for holding immaterial the lack of indorsement on the policies is the fact that the first garnishment proceeding was instituted within fourteen days after the proofs of death and claimant's statement were made and the second garnishment proceeding within three months thereafter. A beneficiary has a reasonable time in which to make election of options under an insurance contract and neither the hesitancy of the insurance company nor the interposition of garnishment proceedings should be permitted to abrogate valuable legal rights.

We hold, therefore, that at the time the two garnishment proceedings were instituted the proceeds of all of the policies were not immediately payable in cash and that the beneficiary had taken all steps necessarily required of her to effectively and validly elect to take deferred payments at the rate of $100 per month. We further hold that a reasonable time for the surrender of the policies had not elapsed when the second garnishment proceeding was begun.

To determine the rights of the appellee in this case, it is necessary to consider the two later policies issued

April 25, 1930, being policies Nos. 11,090,168-9 separately from the two previously issued policies. Policies Nos. 11,090,168-9 contain the contractual provision that unless otherwise directed by the insured the benefits under the options shall not be transferable nor subject to commutation or incumbrance during the lifetime of the payee. The insured in this case gave no directions concerning the benefits. Holding as we do that the beneficiary here made a valid election to take, in lieu of cash, $100 per month, we are of the opinion that force and effect must be given to the provision above cited and hold that the proceeds of policies Nos. 11,090,168-9 were not subject to garnishment. The First District of the Appellate Court of Illinois, in *Holowaty* v. *Prudential Ins. Co.* 282 Ill. App. 587, in which leave to appeal was denied by this court, held that the proceeds of an insurance policy, where by the terms thereof payments of $100 per month were made unassignable by the payee, were not subject to garnishment. Under the terms of the two policies here in question the benefits are made not transferable and not subject to incumbrance during the lifetime of the payee. This court, in *Gurnett* v. *Mutual Life Ins. Co. of New York,* 356 Ill. 612, approved the legality of a life insurance trust more complicated than the one at bar but nevertheless of comparable character.

The two earlier insurance policies on the life of William Kaptowsky, being Nos. 8,542,353 and 9,797,066, contain no provision whereby extended payments shall be either unassignable or not subject to incumbrance. As to these latter policies, we are of the opinion that the moneys due thereon monthly under the election of the beneficiary represent a debt owing from the company to the beneficiary which is subject to garnishment.

One further question remains to be considered and that is the point raised by counsel for appellant that inasmuch as the policies had not been surrendered for cancellation

at the time the garnishment proceedings were instituted the appellee cannot maintain his suit, since there was no showing of a certain and unconditional debt from the insurance company to the beneficiary. In the view which we take of this matter, namely, that by her written election on May 24, 1944, Fannie Kaptowsky validly and effectively accepted the continuing offer of the insurance company under the option provisions and thereby created the legal relationship of debtor and creditor to the extent of $100 per month between herself and the insurance company, we hold that the physical delivery of the policies to the home office was not a necessary condition precedent to the establishment of such debtor-creditor relationship. A further reason why this latter contention is untenable is that a beneficiary who freely exercises her choice under an insurance contract in an endeavor to create legal rights between herself and the insurance company cannot later, in a garnishment proceeding refuse to tender policies for cancellation and then maintain that no debtor-creditor relationship exists because of their nonsurrender for cancellation. Further, it appears from appellant's reply brief that it is her contention that where an option to take proceeds under deferred installments is exercised, surrender of the policies is not required. If this position is sound, it would seem a sufficient answer to the argument discussed here.

For the reasons stated, the judgments of the Appellate Court and of the municipal court of Chicago are reversed and the cause is remanded to the municipal court of Chicago, with directions to enter a judgment in accordance with the views expressed herein.

*Reversed and remanded, with directions.*