**In re Mary B. ASHLEY, Debtor.**

No. 04–80979.

United States Bankruptcy Court, C.D. Illinois.

Oct. 6, 2004.

Charles E. Covey, Peoria, IL, for Debtor.

***OPINION***

THOMAS L. PERKINS, Bankruptcy Judge.

A debtor's ability to exempt certain property from the claims of creditors is one of the most important features of the fresh start that bankruptcy relief provides. Illinois debtors must use the exemptions provided by Illinois law, which, as a rule, are clear and provide fixed, limited value amounts for the various categories of exemptible property. The exemption for life insurance proceeds is an exception. Not only is the exemption unlimited in value, so that large amounts are often at issue, the applicable statutory provisions are so convoluted as to render the legislative intent indiscernible. The issue before the Court requires it to choose between two alternative provisions that exempt life insurance proceeds. Specifically, the Court must decide whether the exemption claimed by a debtor in the proceeds of policies insuring the life of her deceased husband, naming her as the beneficiary, are fully exempt without regard to need, or exempt only to the extent reasonably necessary for her support.

After her husband died, the Debtor, Mary B. Ashley (DEBTOR), filed her voluntary Chapter 7 petition on March 3, 2004. She has no dependents. On her schedule of personal property, she listed $43,000 in a Metropolitan Life money market account and $5,000 as an account receivable due from Hartford Life Insurance, labeling both as life insurance proceeds. On her schedule of exemptions, she claimed the entire $48,000 as exempt pursuant to 215 ILCS 5/238. Gary T. Rafool, the Chapter 7 Trustee (TRUSTEE), objected to the exemption to the extent that the life insurance proceeds are not reasonably necessary for her support.

Although the exemption is claimed only under the life insurance exemption found in the Illinois Insurance Code, 215 ILCS 5/1, *et seq.*, both parties have argued the issue as if the exemption was also sought under the provisions of the general, personal property exemption law, 735 ILCS 5/12–1001. For the reasons set out

hereinafter, this Court determines that the Insurance Code Exemption is inapplicable. Exemption claims may be liberally amended, *In re Bauer*, 298 B.R. 353, 356 (8th Cir. BAP 2003), and the Court will allow the DEBTOR to amend Schedule C to assert the proper basis for the exemption in conformance with this Opinion.

## HISTORICAL BACKGROUND

Under the Bankruptcy Act, the matter of exemptions was left to state law. Section Six of the Act (11 U.S.C. § 24) provided, in pertinent part:

> This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other State....

The Bankruptcy Code, which became effective on October 1, 1979, departed from that rule, providing debtors a choice between federal exemptions or state exemptions, unless their state had opted out of the federal exemptions. As the legislative history behind this provision suggests, the states' exercise of that option would necessarily require a review of the existing law and likely trigger a revamping of many exemption statutes:

> [S]ome State exemption laws have not been revised in this century. Most are outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many states. Thus, the purpose has largely been defeated.

> Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, [footnote omitted] H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the states to set exemption levels appropriate to the locale and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. [footnote omitted] Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

> H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), *reprinted* in 1978 U.S.C.C.A.N. 6087.

*In re Butcher*, 189 B.R. 357 (Bankr.D.Md. 1995).

Discussing Illinois' response to the enactment of the Bankruptcy Code and decision to opt out of the federal exemption scheme, the court in *In re Marriage of Logston*, 103 Ill.2d 266, 469 N.E.2d 167, 82 Ill.Dec. 633 (1984) stated:

> [I]n response to developments in Federal bankruptcy law, the Illinois legislature in 1981 altered the basic format of the personal property exemption statute. The Bankruptcy Reform Act of 1978 (11 U.S.C. sec. 101 *et seq.* (1982)) had increased the relief available to individual debtors by granting several Federal bankruptcy exemptions (11 U.S.C. sec.

522(d) (1982)). The States, however, could deny their residents the benefit of these exemptions by enacting "opt out" legislation. (11 U.S.C. sec. 522(b)(1) (1982).) In 1980, the Illinois legislature chose to opt out of the Federal exemption scheme and restrict our residents to exemptions granted by Illinois law. (See Ill.Rev.Stat.1983, ch. 110, par. 12–1201; see generally Comment, *Bankruptcy Exemptions: Whether Illinois's Use of the Federal "Opt Out" Provision Is Constitutional,* 1981 S.Ill.U.L.J. 65, 65–70.) Shortly thereafter, likely because the existing Illinois provisions "pale[d] in comparison to the federal bankruptcy exemptions" (Comment, *Bankruptcy Exemptions: Whether Illinois's Use of the Federal "Opt Out" Provision Is Constitutional,* 1981 S.Ill. U.L.J. 65, 69; see also Gov. James R. Thompson, Amendatory Veto Message to the Senate of August 20, 1981, 82d Ill.Gen.Assem., S.B. 300), our legislature endeavored to expand Illinois exemptions, including those for personal property (S.B. 300, 82d Ill.Gen.Assem., 1981 Sess., 1981 House Debates, June 27, 1981, at 307–09).

After amendment, section 12–1001 no longer exempted only a few personal possessions and finite amounts of other personalty. It now also exempted the debtor's right to receive certain types of income, such as the social security, pension, and disability insurance benefits that are at issue in the case at bar. (1981 Ill.Laws 3629, 3632–34.) Only the House of Representatives debated this amendment, and its discussion focused on changes to the homestead exemption provisions (Ill.Rev.Stat.1983, ch. 110, pars. 12–901 through 12–912). The legislators did not mention whether the expanded exemptions would affect maintenance and support obligations, and the changes to the personal property provision were not discussed at all. See S.B. 300, 82d Ill.Gen.Assem., 1981 Sess., 1981 Senate Debates, April 1, 1981, at 2, and May 12, 1981, at 20–21; 1981 House Debates, June 23, 1981, at 191–99, and June 27, 1981, at 307–09.

### THE THREE LIFE INSURANCE EXEMPTION PROVISIONS

Resolution of the issue before the Court begins with an analysis of the three statutory provisions that deal with life insurance exemptions.[1] The earliest of those provisions, enacted as part of the Insurance Code in 1937, and unchanged for sixty-seven years, provides that:

All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not, and whether the insured or his estate is a contingent beneficiary or not, shall be exempt from execution, attachment, garnishment or other process, for the debts or liabilities of the insured incurred subsequent to the effective date of this Code, except as to premiums paid in fraud of creditors within the period limited by law for the recovery thereof.

---

**1.** Because of the broad scope of coverage of the statutes at issue, the discussion of those provisions is often set out in general terms. The holding reached in this Opinion, however, is limited to the facts before the Court, where the decedent-insured was the husband of the DEBTOR-beneficiary. The Court does not address the application of the statutes to a life insurance beneficiary's claim of exemption in proceeds, where the relationship of the beneficiary to the insured was other than spousal.

215 ILCS 5/238(a) (hereinafter referred to as the Insurance Code Exemption).

The Insurance Code Exemption has two features that are important to note. First, the exemption pertains to *both* the policy proceeds and the cash value of the policy. Historically, the proceeds of an insurance policy have not been considered an asset of the insured. Explaining the rule, the court in *Vieth v. Chicago Title & Trust Co.*, 307 Ill.App. 99, 30 N.E.2d 126, 130 (Ill.App. 1 Dist.1940), stated:

> [T]he proceeds of life insurance are not an asset even to the insured. In fact, they do not come into existence until after death. During life the insured could not by any suit recover the proceeds, and claim them as his own. The creditor can have no right where the insured possessed none. A man's life is not property; of it he can make no gift; neither can he assign; nor can a creditor take it in payment of a debt."

*See, also, In re Estate of Grigg*, 189 Ill. App.3d 5, 136 Ill.Dec. 636, 545 N.E.2d 160 (Ill.App. 1 Dist.1989) (proceeds of life insurance policy not asset of insured).[2]

The carve-out from the exemption for insurance premiums paid by an insolvent insured was taken from the forerunner of the Insurance Code Exemption, enacted in 1869, to authorize a married woman to obtain an insurance policy on the life of her husband, and to receive the proceeds free and clear of the claims of his creditors, subject to the premium exception.

The rationale underlying the exception was also addressed by the court in *Vieth, supra:*

> The fund, called proceeds, which is created with and after the act of death is not such a fund as to which the equitable principle of tracing funds can be made to apply. The funds known as proceeds are not created by any voluntary or wilful act of the insured, nor by any omission on his part, and that being so, fraud in the ordinary sense cannot be even shown or proven. The act of death in itself is not a fraud on anyone. The creation of the so-called proceeds by the act of death is not, therefore, a violation of the Statute of Frauds and Perjuries because that statute applies to physically existing properties, money or credits, which may become the matter of debts and credits and may be handled in the channels of commerce at large.

Under the aegis of that early provision, held to be in the nature of an exemption law,[3] Illinois courts carefully protected the widow's rights to the insurance proceeds against the claims of creditors of her deceased husband. The Insurance Code Exemption, carrying forward the exemption for proceeds limited only by the recovery of premiums paid by an insolvent insured, extended its protection to the insured's interest in the cash value of an insurance policy payable to a spouse, a child, a parent or other person dependent upon the insured.

**2.** The validity of the common law principle that life insurance proceeds are not property of the insured is itself now subject to some doubt, in light of the advent of viatical settlements and accelerated death benefits, whereby an insured has the right to sell or access the policy proceeds, pre-death, upon certain conditions, usually the occurrence of a life-threatening illness. *See*, Illinois Viatical Settlements Act, 215 ILCS 158/1 *et seq.* (1996). These developments in the life insurance industry post-dated the enactment of the Personal Property Exemption Law and there is no reason to believe that they played any role in the creation of the statute. An insured's rights in life insurance proceeds raise interesting questions of exemptibility that are not before the Court and that need not be addressed here.

**3.** *Houston v. Maddux*, 179 Ill. 377, 53 N.E. 599 (Ill.1899).

The second important feature of the Insurance Code Exemption is the express limitation of its protection against only "the debts or liabilities of the insured." This limitation is of no consequence, of course, when it is the insured who is claiming an exemption in the cash value of a life insurance policy insuring his life, since he is claiming the exemption against his own creditors for his own debts. The limitation makes a world of difference, however, when it is the beneficiary who is claiming the exemption. Enforcing the plain language of the statute, courts have uniformly held that the Insurance Code Exemption protects insurance proceeds only against debts of the insured and not from the beneficiary's own creditors. *Roth v. Kaptowsky*, 393 Ill. 484, 490, 66 N.E.2d 664 (1946); *People ex rel. White v. Travnick*, 346 Ill.App.3d 1053, 1061, 282 Ill.Dec. 295, 806 N.E.2d 270, 277 (Ill.App. 2 Dist.2004); *Uehlein v. Jackson Nat'l Life Insurance Co.*, 1985 WL 1655 (N.D.Ill.1985). Because the Insurance Code Exemption is effective only against the insured's creditors, the DEBTOR, seeking protection against her own creditors, gains nothing from the Insurance Code Exemption and her reliance on the provision is misplaced.

From 1843 through 1981, there was in effect in Illinois a Personal Property Exemption Act, 52 Ill.Rev.Stat. § 13, *et seq.* (1979), that provided meager personal property exemptions but which did not include any exemption pertaining to life insurance. As previously noted, in 1982, the Legislature enacted the new Code of Civil Procedure, now 735 ILCS 5/1–101, *et seq.*, making wholesale revisions and additions to the former Civil Practice Act and other statutes. As part of that enactment, the Personal Property Exemption Act was repealed and a new personal property exemption law was included in the Code of Civil Procedure, and is now codified at Part 10 of that Code, 735 ILCS 5/12–1001, *et seq.* (hereinafter referred to as the Personal Property Exemption Law).[4]

The Personal Property Exemption Law contains two provisions, paragraphs (f) and (h)(3), respectively, that pertain to life insurance, as follows:

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> \* \* \*
>
> (f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not;
>
> \* \* \*
>
> (h) The debtor's right to receive, or property that is traceable to:
>
> \* \* \*
>
> (3) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent, to the extent reasonably

---

4. The enactment of Public Act 82–280 effected, as of July 1, 1982, the adoption of the Code of Civil Procedure, which included the provisions of the former Personal Property Exemption Act. The new language of the Personal Property Exemption Law, including the two provisions pertaining to life insurance, were added shortly thereafter, however, when the Code was subsequently amended by Public Act 82–783, effective July 13, 1982. The available legislative history for both of those Public Acts contains no reference to the exemptions for life insurance.

necessary for the support of the debtor or a dependent of the debtor.

735 ILCS 5/12–1001.

Several points must be noted about the Personal Property Exemption Law. First, the language of paragraph (f) is taken, verbatim, from the Insurance Code Exemption, but is not a full replication of that earlier provision. Critically, the omitted language is that which limits the effect of the exemption to the debts of the insured.[5] Second, paragraph (h)(3) is a separate provision specific to the proceeds, that exempts the debtor's right to receive, or property traceable to, the proceeds from a life insurance policy on the life of one of whom the debtor was a dependent, but only to the extent the proceeds are reasonably necessary for the support of the debtor or a dependent. Given the similarity of the language of this provision with that of Section 522(d)(11)(C) of the Bankruptcy Code, it is safe to assume that the Legislature borrowed this provision from the then-recently enacted Bankruptcy Code.[6]

Attributing to paragraph (f) the same interpretation given to the Insurance Code Exemption as applying to the beneficiary's interest in the proceeds, a spouse's right to claim an exemption in life insurance proceeds is unlimited.[7] But that interpretation leads to a conflict, or at least an overlap, with paragraph (h)(3), which would require the spouse to meet both a dependency and a needs test in order to claim the proceeds as exempt.[8]

Two other bankruptcy courts have previously resolved this ambiguity, holding that a spousal beneficiary is entitled to a full and unlimited exemption in life insurance proceeds pursuant to Section 12–1001(f), without a showing of need, notwithstanding that Section 12–1001(h)(3) provides that such proceeds are exempt only to the extent reasonably necessary for support. *In re Bateman*, 157 B.R. 635 (Bankr. N.D.Ill.1993); *In re Bird*, 288 B.R. 546 (Bankr.C.D.Ill.2002).[9] The DEBTOR relies on these decisions.

---

5. Also omitted is the carve-out for recoverable premiums paid by an insured in fraud of creditors.

6. Bankruptcy Code Section 522(d)(11)(C) provides an exemption for: "The debtor's right to receive, or property that is traceable to—... a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(C).

7. Arguably, the exemption in paragraph (f) for "all proceeds payable because of the death of the insured" could be construed as a stand-alone provision, unconditioned by the relationship between the insured and the beneficiary, resulting in a blanket exemption for all life insurance proceeds. Under that reading of the statute, the relationship element would apply only to the exemption for the cash value.

8. Because the TRUSTEE did not raise the issue as an alternative argument, the Court assumes that the TRUSTEE concedes that if paragraph (f) is determined to be the applicable exemption, that the DEBTOR, as the wife of the insured, does not need to establish that she was "dependent upon the insured," as, for example, would a beneficiary who was the child or parent of the insured. *See, In re Sommer*, 228 B.R. 674, 678 (Bankr.C.D.Ill. 1998) (with a husband and wife, it is a given that there is mutual dependancy so no need for legislature to add that requirement to the life insurance exemption provision in so many words).

9. Judge Larry Lessen, the author of the *Bird* opinion, reaffirmed that holding in *In re Lisa R. McKinney*, 317 B.R. 344, No. 04–70244, 2004 WL 2586698 (Aug. 26, 2004). Neither *Bateman* nor *Bird* refers to or discusses the Insurance Code Exemption. Presumably, the debtor in each of those cases, unlike the DEBTOR here, was not relying on the Insurance Code Exemption either as a basis for the claim of exemption in the life insurance pro-

### THE TRUSTEE'S ARGUMENT

The TRUSTEE, contending that the statute was misconstrued by *Bateman* and *Bird,* urges the Court not to follow those decisions. The TRUSTEE maintains that Section 12–1001(h)(3) was intended to be the sole exemption provision applicable to a beneficiary's interest in life insurance proceeds. To hold that Section 12–1001(f) also applies to such an interest, says the TRUSTEE, would render Section 12–1001(h)(3) meaningless. According to the TRUSTEE, the Legislature must have intended paragraph (f) to be the exemption provision usable by an insured to exempt the insured's interest in a life insurance policy covering his own life, while paragraph (h)(3) is intended for the beneficiary to exempt the beneficiary's interest in proceeds.

### THE RULES OF CONSTRUCTION

The question before the Court requires an interpretation of state law, and no court in Illinois has addressed the issue. Under those circumstances, a federal court must determine the question as it predicts the Supreme Court of Illinois would. *Adams v. Catrambone,* 359 F.3d 858, 862 (7th Cir.2004). According to the Illinois Supreme Court, "the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *People v. Donoho,* 204 Ill.2d 159, 273 Ill. Dec. 116, 788 N.E.2d 707, 715 (Ill.2003). The best evidence of legislative intent is the statutory language. When possible, the court should interpret the statute according to the plain and ordinary meaning of the language. *Id.* If the statutory language is clear and unambiguous, there is no need to resort to other aids of construction. *In re D.L.,* 191 Ill.2d 1, 245 Ill.Dec. 256, 727 N.E.2d 990, 994 (Ill.2000).

Statutory provisions relating to the same subject matter should be construed harmoniously where possible. *Howard v. Board of Educ. of Freeport School Dist. No. 145,* 160 Ill.App.3d 309, 112 Ill.Dec. 131, 513 N.E.2d 545 (Ill.App. 2 Dist.1987). When two statutes that relate to the same subject cannot be construed harmoniously, specific provisions should control over general provisions, and more recent enactments should take precedence over earlier enactments. *Williams v. Illinois State Scholarship Com'n,* 139 Ill.2d 24, 57–58, 150 Ill.Dec. 578, 563 N.E.2d 465 (Ill.1990).

Where the Legislature re-enacts a statute in substantially the same words, it is presumed to have intended to preserve the same meaning. When a statute has been judicially construed, re-enactment preserves the same meaning, as construed, absent a clear legislative intent to the contrary. *Harris Trust & Sav. Bank v. Village of Barrington Hills,* 133 Ill.2d 146, 155, 139 Ill.Dec. 852, 549 N.E.2d 578, 585 (1989). If the Legislature amends a statute after it has been judicially interpreted, the Legislature is presumed to have been aware of the judicial decisions and to have acted with that knowledge. *Clark v. Han,* 272 Ill.App.3d 981, 209 Ill. Dec. 371, 651 N.E.2d 549, 554 (Ill.App. 1 Dist.1995) (citing *People v. Hickman,* 163 Ill.2d 250, 262, 206 Ill.Dec. 94, 644 N.E.2d 1147 (1994)).

### ANALYSIS

Although this Court today reaches the same conclusion as *Bateman* and *Bird,* it does so by a somewhat different analysis. In reaching that result, this Court places primary emphasis upon the fact that Section 12–1001(f) is the offspring of the Insurance Code Exemption, and gives con-

ceeds or as an aid to interpreting the meaning of Section 12–1001(f).

siderable weight to the meaning accorded to that earlier provision.

At first blush, the TRUSTEE'S position makes sense. In concept, it certainly seems reasonable that if the Legislature was going to enact two exemption provisions pertaining to life insurance, an asset possessing the dual elements of cash value and proceeds, that one would cover the insured's interest and the other the beneficiary's interest. This interpretation finds some support in the language of the two provisions. Clearly, paragraph (h)(3) protects only the beneficiary's interest and not that of the insured. And the second part of paragraph (f) is applicable only to the insured's interest in the cash value of the policy. The first phrase of paragraph (f), however, is the elephant in the room that cannot be ignored.

As the court concluded in *Bateman*, the Legislature's use of the prefatory phrase "owned by the debtor" means, in effect, that the only possible reference of the clause "all proceeds payable because of the death of the insured" must be to the interest owned by the beneficiary in the insurance proceeds. *Bateman*, 157 B.R. at 638. This meaning, however, is inconsistent with the expected structural differentiation between paragraphs (f) and (h)(3) and creates an ambiguity as to the intended scope of those paragraphs. The ambiguity doubtlessly arises from the manner in which the statute was put together.[10] The Legislature borrowed a portion of the Insurance Code Exemption and inserted it into the Personal Property Exemption Law at paragraph (f). At the same time, paragraph (h)(3) was imported from the Bankruptcy Code section providing for federal exemptions. Rather than adopting the federal exemption scheme for life insurance in total, however, the Legislature chose, instead, to adopt only a portion of the federal scheme and to retain an existing and, on its face, conflicting, state law exemption provision, all without explaining what it was trying to accomplish.

■ But the elephant in the room must be dealt with. Most tellingly, when transposing the Insurance Code Exemption, the Legislature omitted the phrase limiting the protection of the exemption to debts of the insured. It must be presumed that when the Legislature borrows the language of an existing statute for re-enactment in a new statute, but omits an important limiting phrase, that the omission was intentional and intended to effect a substantive change in meaning. *Lingwall v. Hoener*, 108 Ill.2d 206, 212, 91 Ill.Dec. 166, 483 N.E.2d 512 (1985).

This Court is of the opinion that the only reasonable interpretation to be accorded the transposed statute now appearing at Section 12–1001(f), in light of its predecessor in the Insurance Code, is that the initial phrase, "all proceeds payable because of the death of the insured," retained its plain-meaning reference to the proceeds as property owned by the beneficiary, but without the earlier limitation as to debts of the insured. The omission of that phrase, resulting in a dramatic change to the scope of the exemption, cannot be characterized as a technical correction or housekeeping amendment. The omission can only be interpreted as a deliberate one, reflecting a shift in policy and effecting a substantive change in the law. That omission compels the conclusion that the

---

**10.** It is clear that the uncertainty was caused by the cut-and-paste approach by which the Personal Property Exemption Law was cobbled together, which calls to mind the aphorism that "no one should watch how laws or sausages are made." Unfortunately, like the diner who must negotiate bits of bone and gristle in his sausage, the courts, at the risk of indigestion, are left to masticate the statute and all its impurities.

first phrase of paragraph (f) provides an unlimited exemption to a beneficiary against that person's own creditors.

This conclusion is corroborated by the fact that the Insurance Code Exemption has *not* been repealed. Therefore, it may be presumed that the Legislature intended Section 12–1001(f) to have a different meaning than its preserved ancestor. Had the Legislature intended paragraph (f) to have the identical meaning as the Insurance Code Exemption, it would have replicated the entire provision, without omitting a critical limiting phrase, and it would have repealed the Insurance Code Exemption.

As for the TRUSTEE'S argument that paragraph (h)(3) is rendered meaningless, the court in *Bateman* struggled with the same problem. 157 B.R. at 638–639. Refuting this argument, in reaching its conclusion that the debtor could exempt the proceeds under paragraph (f), the court noted that there were situations where (h)(3) would exclusively apply, for instance, where life insurance payments have been converted to another form of property. Paragraph (h)(3), in addition to exempting the right to receive the payment of the policy proceeds, also exempts property traceable to those proceeds, a provision not found in paragraph (f), which only covers proceeds "payable." Whether or not the Legislature actually intended such a distinction, the net effect appears to be to make paragraph (f) the provision that will apply when the proceeds have not yet been paid out by the life insurance company or, if paid, have not yet been converted into other property by the beneficiary. Section (h)(3) will apply when the proceeds have already been converted into other property before the debtor-beneficiary files for bankruptcy relief.

Accordingly, the Court holds that the DEBTOR, as the beneficiary of life insur-ance policies insuring the life of her husband, is entitled to an exemption in the full $48,000 in proceeds pursuant to 735 ILCS 5/12–1001(f), without regard to whether such proceeds are necessary for her support.

The Court is not entirely comfortable with this result. Prior to 1982, an Illinois debtor-beneficiary had no exemption in life insurance proceeds at all, regardless of need, as against his or her own creditors. In 1978, the Bankruptcy Code put into effect a federal exemption allowing beneficiaries who were dependent upon the deceased to exempt such proceeds only to the extent reasonably necessary for support. 11 U.S.C. § 522(d)(11)(C). Thus, a debtor (even a spouse of the decedent) claiming under the federal exemptions must establish both dependency and need in order to exempt such proceeds.

With the creation of the Personal Property Exemption Law, the Legislature included Section 12–1001(f), imported from the Insurance Code without the limitation on its protection to the debts of the insured, and a slightly modified version of the Bankruptcy Code exemption. Those provisions stand side by side. Since paragraphs (f) and (h)(3) were enacted simultaneously, the Court cannot fall back on the rule of construction that the most recent of two conflicting statutes should take precedence. Neither is one provision more specific than the other. This Court concedes that it is unable to ascertain, with any reasonable degree of certainty, the intent of the Legislature with respect to exemptions in life insurance proceeds and recognizes that permitting a spousal beneficiary to claim an exemption of an unlimited dollar amount in life insurance proceeds, regardless of dependency or need, represents a sea change in policy from the law as it existed prior to 1982. Without the benefit of any explanatory legislative histo-

ry, this Court must, in the end, simply follow that most fundamental principle of statutory construction that a court should give effect, if possible, to every clause and word of a statute. *Moskal v. U.S.*, 498 U.S. 103, 109–110, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990).

## CONCLUSION

■ The TRUSTEE'S speculation as to the likely intent of the Legislature is plausible and may have been persuasive but for the ancestry with which Section 12–1001(f) is saddled. Blood is thicker than water, however, and that ancestry compels the conclusion reached today. To hold that Section 12–1001(h)(3) is the sole exemption available to a beneficiary in life insurance proceeds would be to disregard the plain wording of paragraph (f). To do so on the premise that the Legislature made a drafting error would be speculation at best, and judicial legislation at worst. In the absence of an absurd result, it is beyond the province of a court, when construing a statute, to rescue the Legislature from its drafting errors by providing for what the court might think is the preferred result. *See, In re Lewis*, 305 B.R. 610 (Bankr.D.Dist.Col.2004). The Court believes that its decision today gives the fullest and most true effect to the words used by the Legislature in the statute.

For these reasons, the TRUSTEE'S objection to the DEBTOR'S claim of exemption will be denied. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that:

1. The Debtor's claim of exemption in life insurance proceeds scheduled as $43,000 in a Metropolitan Life money market account and $5,000 due from Hartford Life Insurance Company is allowable, in full, pursuant to 735 ILCS 5/12–1001(f), without a showing by the Debtor that she was a dependent of the insured or that the proceeds are reasonably necessary for the support of the Debtor or a dependent of the Debtor.

2. The Trustee's objection to that exemption claim is DENIED; and

3. The Debtor is allowed fourteen (14) days in which to file an Amended Schedule C in conformance with the Opinion.