**In re Margaret STILWELL, Debtor.**

**Tuscola National Bank, Community Banks of Shelby County, Appellants,**

**v.**

**Margaret Stilwell, Debtor, Appellee.**

No. 04–CV–2258.

United States District Court, C.D. Illinois, Urbana Division.

March 10, 2005.

Timothy O. Smith, Danville, IL, for Appellant Tuscola National Bank.

Mariann Pogge, Springfield, IL, for Appellant Community Banks of Shelby County.

Rodney Louis Smith, Brankey & Smith, P.C., Charleston, IL, for Appellee.

### *ORDER*

McCUSKEY, Chief Judge.

This is an appeal from an Order entered by the United States Bankruptcy Court

for the Central District of Illinois (Bankruptcy Case No. 03–93877) brought pursuant to 28 U.S.C. § 158(a). Following this court's careful review, this court affirms the Order of the Bankruptcy Court.

## FACTS

The Debtor, Margaret Stilwell, filed her voluntary petition under chapter 7 of the Bankruptcy Code on November 25, 2003. In Schedule C of her Bankruptcy Petition, the Debtor claimed an exemption in all proceeds from two life insurance policies on the life of her deceased husband. On February 26, 2004, Community Banks of Shelby County (Community Banks), a secured creditor of the Debtor, filed its Objection to Claims of Exemption and argued that the life insurance proceeds should be exempt only "to the extent reasonably necessary for the support of the debtor or a dependent of the debtor." On February 27, 2004, Tuscola National Bank, another secured creditor of the Debtor, filed its Objection to Claimed Exemption and also argued that the Debtor should not be allowed a 100% exemption for the $650,000 in life insurance proceeds. The Chapter 7 Trustee, Marsha L. Combs–Skinner, and another creditor also filed objections to the claimed exemption. On March 15, 2004, the Debtor filed her Response to Objection to Claim Exemptions and a Memorandum of Law in Support of her Claimed Exemptions. The Debtor cited *In re Bateman,* 157 B.R. 635 (Bankr.N.D.Ill.1993) and *In re Bird,* 288 B.R. 546 (Bankr.C.D.Ill.2002) in support of her position that she was entitled to an exemption in the insurance proceeds.

The parties entered into a Stipulation of Facts regarding the claimed exemption for the life insurance proceeds. The parties stipulated that the Debtor's husband, James Stilwell, died on May 2, 2003. Stilwell was survived by the Debtor and their four children, Jamie Stilwell, Heidi Stilwell, Megan Stilwell, and Haley Stilwell. The two youngest daughters still lived at home and were dependent upon the Debtor. At the time of Stilwell's death, the Debtor was the sole beneficiary of a $50,000 life insurance policy and was 60% beneficiary of a $1 million policy. The Debtor was entitled to $600,000 in proceeds from the $1 million policy and each of the daughters was entitled to $100,000 in proceeds from this policy. The stipulation stated that the life insurance proceeds to which the Debtor was entitled, totaling $650,000, were being held and were accruing interest pending resolution of the objections.

On October 19, 2004, Chief United States Bankruptcy Judge Gerald D. Fines issued an Opinion in this case. *In re Stilwell,* 2004 WL 2708512 (Bankr.C.D.Ill. 2004). Judge Fines noted that two other Bankruptcy Judges in the Central District of Illinois, Judge Larry L. Lessen and Judge Thomas L. Perkins, had issued Opinions that dealt squarely with the issues raised in this proceeding. Both Judge Lessen and Judge Perkins held that all proceeds from a life insurance policy insuring the life of a debtor's spouse were entirely exempt pursuant to the provisions of 735 Ill. Comp. Stat. 5/12–1001(f) (West 2002). *See In re Ashley,* 317 B.R. 352 (Bankr.C.D.Ill.2004); *In re McKinney,* 317 B.R. 344 (Bankr.C.D.Ill.2004); *In re Bird,* 288 B.R. 546 (Bankr.C.D.Ill.2002). Judge Fines therefore entered an Order which denied the Objections to the Claimed Exemption. Subsequently, Community Banks and Tuscola National Bank each filed a timely Notice of Appeal from Judge Fines' Order.

## ANALYSIS

■ On appeal, both Community Banks and Tuscola National Bank contend that

Judge Fines applied the wrong Illinois statute in ruling on their Objections. The issue presented for review is whether Judge Fines properly allowed the Debtor's claim of a full exemption of the proceeds of her deceased husband's life insurance under 735 Ill. Comp. Stat. 5/12–1001(f) or whether Judge Fines should have allowed an exemption for only that portion of the life insurance proceeds necessary for the Debtor's support under 735 Ill. Comp. Stat. 5/12–1001(h)(3). A debtor's entitlement to a bankruptcy exemption is a question of law to be reviewed de novo. *Matter of Yonikus*, 996 F.2d 866, 868 (7th Cir.1993). Following this court's careful and thorough de novo review, this court agrees with all of the other courts which have decided this issue, including United States District Judge Jeanne E. Scott, and concludes that the Debtor was entitled to a full exemption under Illinois law.

Under the Bankruptcy Act, the matter of exemptions was left to state law. *See Ashley*, 317 B.R. at 354. However, under the Bankruptcy Code, which became effective on October 1, 1979, debtors were provided a choice between federal exemptions or state exemptions, unless their state had opted out of the federal exemptions. *Ashley*, 317 B.R. at 354. Subsequently, the Illinois legislature enacted 735 Ill. Comp. Stat. 5/12–1201, effective July 1, 1982, which stated, in pertinent part, "residents of this State shall be prohibited from using the federal exemptions provided in Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d)), except as may otherwise be permitted under the laws of Illinois." 735 Ill. Comp. Stat. 5/12–1201 (West 2002). Accordingly, Illinois has elected to opt out of the federal exemptions, and Illinois law applies to exemptions.

Section 12–1001 of the Illinois Code of Civil Procedure sets out a list of exempt personal property. The statute provides, in pertinent part:

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> .　　.　　.　　.　　.
>
> (f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not;
>
> .　　.　　.　　.　　.
>
> (h) The debtor's right to receive, or property that is traceable to:
>
> .　　.　　.　　.　　.
>
> (3) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor or a dependent of the debtor.

735 Ill. Comp. Stat. 5/12–1001(f),(h)(3) (West 2002).

As noted, it is the Debtor's position that section 12–1001(f) applies to this situation and, therefore, the entire proceeds she received as beneficiary of the life insurance policies insuring her husband's life, $650,000, is exempt. It is the position of Community Banks and Tuscola National Bank that section 12–1001(h)(3) applies and the proceeds of the life insurance policies are exempt only "to the extent reasonably necessary for the support of the debtor" and her dependents.

Unfortunately, no published Illinois decision has addressed this precise issue. Fortunately, however, this court is not the first to address the interplay between the two statutes. The first court to address this issue was United States Bankruptcy Judge Jack B. Schmetterer in *In re Bateman*, 157 B.R. 635 (Bankr.N.D.Ill.1993). In addressing this issue, Judge Schmetterer aptly stated that "[i]t must be conceded that the Illinois Legislature has not drafted §§ 1001(f) and 1001(h)(3) in a way in which distinction between application of these provisions comes immediately to the eye." *Bateman*, 157 B.R. at 638. The court then concluded that § 1001(f) applied to this situation, noting that this reading of the statute was "squarely in line with the general requirement that exemptions be liberally construed in favor of debtors." *Bateman*, 157 B.R. at 639.

In *In re Bird*, 288 B.R. 546 (Bankr. C.D.Ill.2002), Judge Lessen, in addressing precisely the same issue, accepted the rationale and holding in *Bateman*. *Bird*, 288 B.R. at 548. Judge Lessen had the same issue before him again in *In re McKinney*, 317 B.R. 344 (Bankr.C.D.Ill.2004). Judge Lessen found that his holding in *Bird* was sound and should be up held in that case. *McKinney*, 317 B.R. at 345. Judge Lessen stated that he considered the argument for reconsidering the issue and re-read Judge Schmetterer's opinion in *Bateman*. Judge Lessen stated that "Judge Schmetterer's interpretation of § 1001(f) is, in this Court's opinion, the best interpretation of a poorly-written statute. It is logical, well-reasoned, and consistent with the general requirement that exemptions be liberally construed in favor of debtors." *McKinney*, 317 B.R. at 345.

The issue was next addressed by Judge Perkins in *In re Ashley*, 317 B.R. 352 (Bankr.C.D.Ill.2004). Judge Perkins first noted that the issue before the court re-quired it to choose between two alternative provisions that exempt life insurance proceeds. *Ashley*, 317 B.R. at 353. Judge Perkins started his analysis of the issue by considering the earliest statutory provision dealing with life insurance exemptions, a provision enacted as part of the Insurance Code in 1937, and unchanged for sixty-seven years. *Ashley*, 317 B.R. at 355, *citing* 215 Ill. Comp. Stat. 5/238(a). Judge Perkins noted that, under the exemption provided in the Insurance Code, "Illinois courts carefully protected the widow's rights to the insurance proceeds against the claims of creditors of her deceased husband." *Ashley*, 317 B.R. at 356. Judge Perkins further noted that, in enforcing the plain language of the statute, "courts have uniformly held that the Insurance Code Exemption protects insurance proceeds only against debts of the insured and not from the beneficiary's own creditors." *Ashley*, 317 B.R. at 357, *citing Roth v. Kaptowsky*, 393 Ill. 484, 66 N.E.2d 664 (1946); *People ex rel. White v. Travnick*, 346 Ill.App.3d 1053, 282 Ill.Dec. 295, 806 N.E.2d 270, 277 (2004); *Uehlein v. Jackson Nat'l Life Ins. Co.*, 1985 WL 1655 (N.D.Ill.1985). Judge Perkins thereafter noted that the language of section 12–1001(f) was taken, verbatim, from the Insurance Code Exemption, but was not a full replication of the earlier provision. *Ashley*, 317 B.R. at 358.

In *Ashley*, the Trustee argued that the Legislature must have intended section 12–1001(f) to be the exemption provision usable by an insured to exempt the insured's interest in a life insurance policy covering his or her own life while section 12–1001(h)(3) was intended to be the sole exemption provision applicable to a beneficiary's interest in life insurance proceeds. *Ashley*, 317 B.R. at 359.

In addressing this argument, Judge Perkins noted a structural ambiguity in the

statute which arose from the manner in which the statute was put together: the Legislature borrowed a portion of the Insurance Code Exemption and inserted it into the Personal Property Exemption Law at paragraph (f); and, at the same time, the Legislature imported paragraph (h)(3) from the Bankruptcy Code section providing for federal exemptions. *Ashley,* 317 B.R. at 360. However, "[r]ather than adopting the federal exemption scheme for life insurance in total, ... the Legislature chose, instead, to adopt only a portion of the federal scheme and to retain an existing and, on its face, conflicting, state law exemption provision, all without explaining what it was trying to accomplish." *Ashley,* 317 B.R. at 360. Judge Perkins stated:

> But the elephant in the room must be dealt with. Most tellingly, when transposing the Insurance Code Exemption, the Legislature omitted the phrase limiting the protection of the exemption to debts of the insured. It must be presumed that when the Legislature borrows the language of an existing statute for re-enactment in a new statute, but omits an important limiting phrase, that the omission was intentional and intended to effect a substantive change in meaning.

*Ashley,* 317 B.R. at 360. Judge Perkins determined that this omission "compels the conclusion that the first phrase of paragraph (f) provides an unlimited exemption to a beneficiary against that person's own creditors." *Ashley,* 317 B.R. at 360–61. Judge Perkins reached the same conclusion in *In re Hoffman,* 2004 WL 2331802 (Bankr.C.D.Ill.2004).

Judge Lessen's decision in *McKinney* was appealed to United States District Court Judge Jeanne E. Scott. On January 5, 2005, Judge Scott affirmed. Citing *Matter of Barker,* 768 F.2d 191, 196 (7th Cir.1985), Judge Scott noted that exemption statutes are to be read liberally in favor of the debtor. *McKinney,* Case No. 04–3212, slip op. at 6–7. Judge Scott then stated that she agreed with Judge Lessen that the plain language of § 1001(f) states that a beneficiary, such as McKinney, can claim an exemption for all life insurance proceeds. *McKinney,* slip op. at 7. Judge Scott carefully addressed the Trustee's argument that the Legislature intended § 1001(f) to have the same meaning as the Insurance Code Exemption in 215 Ill. Comp. Stat. 5/238(a). Judge Scott rejected this argument, explaining that "the Legislature borrowed only part of the language in § 238 when enacting § 1001(f); it omitted the critical language that limited the exemption to 'debt or liabilities of the insured.' The omission of the limiting language indicates that the Legislature intended § 1001(f) to have a broader application than § 238." *McKinney,* slip op. at 13.

Judge Scott also addressed the Trustee's argument that the Legislature "merely failed to change the word 'insured' contained in the Insurance Code exemption to 'debtor' when it copied the language into the general personal property exemption of 12–1001." *McKinney,* slip op. at 13. Judge Scott stated that the Trustee "may be correct that § 1001(f) would say what she wants it to say if the Court changes the words of the section; however, the Court does not have the authority to change the words in the statute" and "must interpret the statute as enacted by the Legislature." *McKinney,* slip op. at 14. Judge Scott also rejected the Trustee's argument that Judge Lessen's interpretation of § 1001(f) violated principles of statutory construction because the interpretation rendered § 1001(h)(3) meaningless. Judge Scott stated:

> The simple truth is that, given the overlap between §§ 1001(f) and

1001(h)(3), any interpretation is going to give one of these sections precedence over the other. The Court must read the overlap in an exemption statute favorably to the debtor: "[W]here an exemption statute might be interpreted either favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor." *Barker*, 768 F.2d at 196. Thus, "[i]n the absence of a more specific statement by the Illinois legislature that a debtor cannot use" the § 1001(f) exemption, this Court, "must conclude that" McKinney, "is entitled," to claim the § 1001(f) exemption. *Id.* The Illinois Legislature has not made a more specific statement that McKinney cannot claim the exemption allowed by the first clause of § 1001(f). This Court, thus, must agree with the Bankruptcy Court (and the decisions in *Ashley, Bird,* and *Bateman*) that she can claim the exemption.

*McKinney,* slip op. at 16. Court records show that no appeal was taken from Judge Scott's Order.

In this case, Community Banks and Tuscola National Bank argue that the Bankruptcy Courts which have decided this issue got it wrong and this court should correctly interpret the statutes and find that section 1001(h)(3) applies to this situation. Both Banks rely on the fact that the Legislature, in enacting Public Act 82–783, which included both section 1001(f) and section 1001(h)(3), stated that "[t]his Act is intended to make nonsubstantive revisions in the law." The Banks argue that this statement indicates that the omission of the phrase limiting the protection of the exemption to debts of the insured was in fact unintentional. The Banks argue, as the Trustee argued before Judge Scott, that if the word "debtor" is used in place of "insured" in section 1001(f), both section 1001(f) and section 1001(h)(3) make sense and serve a distinct purpose.

The Debtor argues that Judge Fines and the other Bankruptcy Judges who have decided this issue got it right, based upon well-established rules of statutory construction, and this court should also find that the Debtor's right to receive proceeds as a spouse of the insured are completely exempt under section 1001(f).

In its Reply Brief, Tuscola National Bank argues that Judge Scott also was wrong. Tuscola National Bank notes that Judge Scott did not consider the fact that the Legislature's express statement of its intent was that it intended "to make nonsubstantive revisions in the law." Tuscola National Bank acknowledges, however, that Public Act 82–783 "does add additional law to the Personal Property Exemption in Illinois, including the new limiting language of 1001(h)." In fact, Public Act 82–783 added most of the language that now comprises 735 Ill. Comp. Stat. 5/12–1001 and sets out the personal property that is exempt in Illinois. These exemptions are the only ones which may be used by bankruptcy filers in Illinois because, as noted previously, the Illinois Legislature has stated that residents of this state are prohibited from using the federal exemptions set out in the Bankruptcy Code. *See* Ill. Comp. Stat. 5/12–1201 (West 2002).

■ This court has carefully reviewed the arguments of the parties in this case and the decisions which have addressed this issue. Following this careful review, this court sees no reason to disagree with Judge Scott's well-reasoned decision in *McKinney* or with the decisions of the Bankruptcy Judges in *Bateman, Bird, McKinney, Ashley,* and *Hoffman.* This court does not find persuasive the argument that the Legislature intended only a nonsubstantive revision in the law when the text of Public Act 82–783 shows that the Legislature added new, substantive

provisions to the section setting out exemptions for personal property. The Debtor has listed twelve new exemptions added by the Act, a listing which did not include the subsections at issue in this case. This court agrees with the characterization by Judge Scott that "the Illinois Legislature enacted both §§ 1001(f) and 1001(h)(3) at the same time as part of a complete revision of the Illinois personal property exemption law." *McKinney,* slip op. at 8; *see also In re Marriage of Logston,* 103 Ill.2d 266, 82 Ill. Dec. 633, 469 N.E.2d 167, 173–74 (1984) (discussing how, in response to developments in Federal bankruptcy law, the Illinois legislature "altered the basic format of the personal property exemption statute" and expanded section 12–1001 so that it no longer exempted only a few personal possessions and finite amounts but rather "also exempted the debtor's right to receive certain types of income, such as social security, pension, and disability insurance benefits"). This court therefore finds the Banks' argument on this point completely unavailing. Accordingly, for all of the reasons stated, this court concludes that Judge Fines correctly found that the Debtor is entitled to a claim of exemption of 100% of the proceeds of life insurance policies payable to her as a result of the death of her husband, James Stilwell.

IT IS THEREFORE ORDERED THAT:

(1) The Order of the Bankruptcy Court entered on October 19, 2004, is AFFIRMED.

(2) This case is terminated in the district court.